EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

PICOMA INDUSTRIES, INC. and Inter-
national Union, the United Steelworkers
of America and its affiliated Local 5437,
Defendants.

No. C–2–76–476.

United States District Court,
S. D. Ohio, E. D.

July 26, 1978.

Jeffrey C. Bannon, EEOC, Chicago, Ill., for plaintiff.

Gerald P. Duff, Kinder, Kinder & Hanlon, St. Clairsville, Ohio, for defendant Picoma Indus.

Patrick S. Cassidy, O'Brien & Cassidy, Bridgeport, Ohio, for defendant unions.

## OPINION AND ORDER

KINNEARY, District Judge.

Plaintiff, the Equal Employment Opportunity Commission, brings this action under Title VII of the Civil Rights Act of 1964, claiming that the defendant Picoma Industries, Inc., practices religious discrimination in violation of § 701(j) of the Act, 42 U.S.C. § 2000e(j), which makes it an unlawful employment practice for an employer to discriminate against an employee on the basis of his religion. The International Union, the United Steel Workers of America and its Affiliated Local 5437, also named as defendants herein, are joined in the action under Rule 19(a) of the Federal Rules of Civil Procedure. This matter is now before the Court on the parties' cross motions for summary judgment. The parties agree that there remains in dispute no fact material to the resolution of the issues, and the procedures established in Rule 56 of the Federal Rules Civil Procedure are therefore appropriate to the resolution of this action.

The undisputed facts are as follows. Jerry C. McCracken, the charging party herein, was hired by Picoma in 1956 and has remained employed by Picoma as a machinist since that date. In 1962, Mr. McCracken became a member of the World–Wide Church of God and since that time, in accordance with his church's teachings, has observed the period from sundown on Friday to sundown on Saturday as his weekly sabbath.

For a period of years, Mr. McCracken suffered no inconvenience in coordinating his religious practices with his job, since his seniority allowed him to work a nonconflicting shift. In 1971, Picoma instituted a "swing shift" routine for the machinists in response to a petition from a majority of those workers. (Prior to this date, only the machinists were exempt from the swing shift schedule.) Thereafter, each machinist was required to work each of the plant's three shifts on a rotating basis. Accordingly, Mr. McCracken was assigned to the afternoon shift, beginning at 3:00 p. m. and ending at 11:00 p. m., approximately once a month.

When assigned to the afternoon shift, Mr. McCracken was of course faced with a conflict on Friday evenings at sundown. In response to this conflict, Picoma agreed to allow Mr. McCracken to leave at sundown without disciplinary action or loss of seniority. However, he is not paid for the hours during which he is absent.[1] Mr. McCracken, not willing to take this loss in pay, asked that he be permitted to switch shifts on those Fridays when he was assigned to the afternoon shift. The company refused this alternative in reliance upon the company-wide policy, instituted some time before, that required that shift-switching be done on a weekly rather than a daily basis. Shortly after the machinists began working swing shifts, Mr. McCracken attempted to find a substitute for the weeks during which he was assigned to the afternoon shift, but because that shift is unpopular, he was unable to do so.[2] As a consequence, since 1971, Mr. McCracken has left work early approximately one day per month, with excused absences but without pay.

The plaintiff Commission claims that the defendant Picoma has discriminated against Mr. McCracken because of his religious beliefs and practices by depriving him of the opportunity to work a full week during those periods when he is assigned to the afternoon shift. All administrative procedures have been followed, and this Court has jurisdiction over the subject matter of the claim. 42 U.S.C. § 2000e–6.

Section 2000e–2(a) makes it unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion, or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's religion.

Section 2000e(j) provides that

[t]he term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

As is clear from the face of the statute, an employer must make reasonable accommodations, short of undue hardship, for the religious practice of his employees. *Trans World Airlines, Inc. v. Hardison*, 432 U.S.

---

1. Picoma also gave Mr. McCracken excused absences for observance of his faith's religious holidays, including an annual week-long feast. Mr. McCracken's vacation time, subject to limitations of seniority, was also available for these times, enabling him to be absent with pay.

2. It appears that Mr. McCracken has not sought volunteers for a weekly switch since 1971.

63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1977).

It is the Commission's position that Mr. McCracken should be permitted to switch shifts for Friday alone, rather than be required to find a replacement for the entire week of the afternoon shift. The Commission concedes that Picoma's policy is a practice of long standing and that it has therefore risen to the level of a contractual provision. Accordingly, Picoma may not unilaterally waive the requirement without first at least bargaining with the union. *See Wald Manufacturing Co. v. N. L. R. B.*, 426 F.2d 1328 (6th Cir. 1970). Although the matter has never been officially submitted to the union membership, a union spokesman has indicated that he could foresee no obstacle to union approval so long as no other employee's rights were violated by virtue of such accommodation.

On the other hand, Picoma contends that it has already made reasonable accommodations to Mr. McCracken's religious practices by giving him excused absences and by permitting him to switch shifts for the week during which he is assigned to the afternoon shift. Moreover, Picoma argues that to allow Mr. McCracken to switch shifts for one day at a time would cause undue hardship upon the employer because such an accommodation would undercut the policy of discouraging absenteeism throughout the plant that gave rise to the requirement for switching on a weekly basis.

■ In resolving an action brought under § 701(j), it is necessary to balance the religious needs of the individual employee and the legitimate business needs of the employer. *McDaniel v. Essex International, Inc.*, 571 F.2d 338, 344 (6th Cir. 1978).

The phrases "reasonably accommodate" and "undue hardship" as used in 42 U.S.C. § 2000e(j) are relative terms and cannot be given any hard and fast meaning. Each case necessarily depends upon its own facts and circumstances, and every case boils down to a determination as to whether the employer has acted reasonably.

*United States v. City of Albuquerque*, 545 F.2d 110, 114 (10th Cir. 1976).

The facts of this case differ in at least one major respect from those involved in the overwhelming number of prior cases in which religious discrimination was alleged: Mr. McCracken has not been at all disciplined by his employer because of his religious practices. *Cf. e. g., Trans World Airlines v. Hardison, supra; McDaniel v. Essex International, Inc., supra; Rohr v. Western Electric Co.*, 567 F.2d 829 (8th Cir. 1977); *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515 (6th Cir. 1976). Despite Picoma's undisputed accommodations, however, the issue remains whether its actions have been reasonable or whether Picoma should be required to accommodate further still by permitting Mr. McCracken the opportunity to switch shifts for one day in the event he is able to find co-workers willing to switch.

■ Under the circumstances presented in this action, the Court concludes that Picoma has made reasonable accommodations to Mr. McCracken's religious practices and, in light of the flexibility already shown by Picoma, to grant Mr. McCracken an exemption to the weekly switch rule would work an undue hardship upon the employer.

Picoma's policy of granting excused absences and permitting its employees the opportunity to switch shifts on a weekly basis goes a long way in relieving Mr. McCracken's conflict, and the hardship suffered by Mr. McCracken in losing several hours of work per month is more directly attributable to his inability to secure volunteers among his co-workers than to the inflexibility of his employer. Moreover, Picoma has an understandable interest in discouraging absenteeism by encouraging predictability within its work force.

Were the hardship suffered by Mr. McCracken greater, or had Picoma not already made some accommodation to his religious practices, the Court might be inclined to attach less significance to Picoma's interest in holding firm in its policy of permitting shift-switching only on a weekly basis. However, Picoma has made accommoda-

tions, has not disciplined Mr. McCracken, and has provided at least one avenue of relief. Considering all these factors, and further considering the relatively minimal disadvantage suffered by Mr. McCracken in missing part of one day's work approximately once per month, Picoma's interests weigh much more heavily in favor of a finding of reasonable accommodation short of undue hardship.[3]

In sum, then, the Court concludes that defendant Picoma has reasonably accommodated, short of undue hardship, the religious practices of Mr. McCracken.

WHEREUPON, the Court determines that the defendants' motions for summary judgment are meritorious and they are therefore GRANTED. The Court further determines that plaintiff's motion for summary judgment is without merit and it is therefore DENIED.

The Clerk shall enter final judgment for the defendants.

---

**3.** In *Draper v. United States Pipe & Foundry Co., supra,* 527 F.2d 515, 519 (6th Cir. 1976), the Court indicated that the mere grant of excused absences, at least during an interim period, may constitute sufficient accommodation under the statute.