Herman O. TOOLEY, Edward J. Helt and Arnold G. Bakke, Plaintiffs-Appellees,

v.

MARTIN–MARIETTA CORPORATION, a corporation; and United Steel Workers of America, Local 8141, Defendants-Appellants.

No. 80–3029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1981.

Decided June 22, 1981.

Michael H. Gottesman, Bredhoff, Gottesman, Cohen, Chanin & Petramato, Washington, D. C., for defendants-appellants.

Susan Buckingham Reilly, Lutz Alexander Prager, Washington, D. C., John Spencer Stewart, Kobin & Meyer, Portland, Or., argued for plaintiffs-appellees; Leroy D. Clark and Joseph T. Eddins, Jr., on brief.

Before HUG, TANG and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

The United Steelworkers of America, Local 8141, appeal the decision and order of the district court, enjoining the Steelworkers and the Martin-Marietta Corporation from attempting to discharge the plaintiffs for their nonpayment of union dues. We affirm.

## FACTS

In 1976, the Martin-Marietta Corporation and Steelworkers Local 8141 executed a collective bargaining agreement containing a "union shop" clause, under which the company was obligated to discharge all employees who failed to join the union. Plaintiffs Tooley, Bakke, and Helt are Seventh Day Adventists who, under the tenets of their faith, are prohibited from becoming members in or paying a service fee to a union. Plaintiffs informed the company and the union of this proscription, and offered to pay an amount equal to union dues to a mutually acceptable charity. The union refused.

After exhausting their administrative remedies, plaintiffs instituted this action, alleging that the union's and the company's refusal to honor the requested accommodation constituted religious discrimination under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e–2(a), 2000e–2(c) (1976). In particular, the plaintiffs argued that both the union and the company were required under section 701(j) of the Act, 42 U.S.C. 2000e(j) (1976), to make good faith efforts to institute their requested exemption unless it would result in undue hardship to either the Steelworkers or the company. The Steelworkers contended that the "substituted charity" accommodation was unreasonable, that its implementation would cause the union undue hardship, and that by authorizing such an accommodation, section 701(j) violated the Establishment Clause. The district court enjoined the un-

ion and the company from attempting to discharge the plaintiffs for failing to pay union dues so long as they make equivalent contributions to a mutually acceptable charity. *Tooley v. Martin-Marietta Corp.*, 476 F.Supp. 1027 (D.Or.1979).[1]

## DISCUSSION

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a) and 2000e–2(c) (1976), provides that it is an unlawful employment practice for either an employer or a union to discriminate against an individual because of that individual's "religion." Section 701(j) of the Act, 42 U.S.C. 2000e(j) (1976), defines "religion" to include all aspects of religious observance, "unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Although this definition is framed in terms of the employer's ability to accommodate, we have held that the duty imposed by section 701(j) applies equally to unions. *Yott v. North American Rockwell Corp. (Yott II)*, 602 F.2d 904, 909 (9th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980).

We have previously considered, in four separate opinions, the applicability of Title VII's religious discrimination provisions to fact situations involving religious objectors to mandatory union dues. *Yott II; Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397 (9th Cir. 1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403 (9th Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Yott v. North American Rockwell Corp. (Yott I)*, 501 F.2d 398 (9th Cir. 1974). In each case, we supplied guidelines for determining the scope of both the "reasonable" accommodation requirement and the "undue" hardship limitation imposed by section 701(j) in factual settings nearly identical to that presented here.

1. The parties have agreed to maintain an amount equal to the dues owed by the plaintiffs to the union in a deposit account pending the disposition of this case.

## I. REASONABLENESS OF THE SUBSTITUTED CHARITY ACCOMMODATIONS

The Steelworkers do not deny that the plaintiffs established a prima facie case of discrimination under Title VII. The burden was thereafter on the Steelworkers to establish that they reasonably accommodated the plaintiffs' religious beliefs. *Anderson*, 589 F.2d at 401. The Steelworkers argue, however, that they were not required to make any effort to accommodate the plaintiffs' religious beliefs because the requested accommodation was inherently "unreasonable."

▮ The Steelworkers first contend that the substituted charity accommodation is unreasonable because it is plainly inconsistent with the broad and unqualified national labor policy of promoting union shop agreements between union and employer. *See* 29 U.S.C. § 158(a)(3) (1976). We have previously acknowledged the apparent "tension and conflict" between the union's interest in obtaining the benefits of a union shop agreement, authorized by the NLRA, and the interests of religious employees in avoiding the burdens and evils associated with employment discrimination, prohibited by Title VII. *Anderson*, 589 F.2d at 400. We observed, however, that section 701(j) effects a balance between these interests by requiring *reasonable* accommodation of the employee's religious beliefs by the union or the employer in the absence of resulting *undue* hardship to either. *Id.* at 400–01;

accord, *McDaniel v. Essex International, Inc.*, 571 F.2d 338, 343 (6th Cir. 1978); *Cooper v. General Dynamics, Convair Aerospace Division*, 533 F.2d 163, 169–70 (5th Cir. 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977). The substituted charity accommodation is consistent with the balancing of interests promoted by section 701(j). Under this accommodation, the union is entitled to enjoy the benefits of the union shop agreement while the plaintiffs are entitled to practice in accordance with their religious convictions. To the extent that the substituted charity accommodation effects this balance, it is reasonable under section 701(j).

Our conclusion is consistent with recent additions to the NLRA. Congress has amended section 19 of the NLRA to require an accommodation virtually identical to that requested by the plaintiffs.[2] *See* Act of Dec. 24, 1980, Pub.L. No. 96–593, 94 Stat. 3452. The legislative history to that amendment (1) recognizes that the substituted charity accommodation effects a reasonable reconciliation between section 8(a)(3) of the NLRA and Title VII, and otherwise constitutes a reasonable accommodation under section 701(j)[3] and (2) establishes that the accommodation does not interfere with the employer's or union's right to execute union shop agreements, which are still authorized under section 8(a)(3).[4]

Alternatively, the Steelworkers argue that exempting the plaintiffs from manda-

---

**2.** Section 19 of the NLRA now provides:

Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund exempt from taxation under section 501(c)(3) of title 26 of the Internal Revenue Code, chosen by such employee from a list of at

least three such funds, designated in such contract or if the contract fails to designate such funds, then to any such fund chosen by the employee. If such employee who holds *conscientious objections pursuant to this section* requests the labor organization to use the grievance-arbitration procedure on the employee's behalf, the labor organization is authorized to charge the employee for the reasonable cost of using such procedure.

**3.** 126 Cong.Rec. H760 (daily ed. Feb. 11, 1980) (remarks of Rep. Thompson); 126 Cong.Rec. H763 (daily ed. Feb. 11, 1980) (remarks of Rep. Duncan).

**4.** 126 Cong.Rec. H764 (daily ed. Feb. 11, 1980) (remarks of Rep. Erlenborn).

tory union dues is unreasonable because it results in impermissible unequal treatment. Disparate treatment of employees, however, is not necessarily unreasonable. *See Brown v. General Motors Corp.,* 601 F.2d 956, 961–62 (8th Cir. 1979). The religious accommodation provisions do not authorize *preferential* treatment of employees. They do not require an employer or union to deny the express contractual rights of some employees or to incur substantial costs of accommodation for the benefit of those to be accommodated. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 81, 84, 97 S.Ct. 2264, 2275, 2276, 53 L.Ed.2d 113 (1977). The substituted charity accommodation does not result in preferential treatment between employees. The plaintiffs suffer the same economic loss as the union member employees. The accommodation is reasonable.[5]

## II. HARDSHIP FROM THE SUBSTITUTED CHARITY ACCOMMODATION

The Steelworkers argue that the substituted charity accommodation works an undue hardship on the union by depriving it of funds necessary for the union's support. The district court noted that the Steelworkers' surplus reserves for the last three years, even after charitable contributions, exceeded the dues lost by accommodating as many as six employees.[6] Consequently, the district court held that since the "likelihood" of hardship to the union would be "remote," the Steelworkers had failed to establish "undue" hardship. 476 F.Supp. at 1030–31.

The Steelworkers first contend that the standard used by the district court is incon-

sistent with that adopted by the *Hardison* Court, which held that "accommodation costs" that are greater than *de minimis* place an undue hardship on an employer, 432 U.S. at 84, 97 S.Ct. at 2276, and presumably a union. The Steelworkers contend that reference to the availability of surplus funds in the union's reserve is a departure from the *de minimis* standard.

We have recognized that the *Hardison* standard applies to religious accommodations of the kind requested here. *Burns v. Southern Pacific Transportation Co.,* 589 F.2d 403, 406–07 (9th Cir. 1978), *cert. denied,* 439 U.S 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). We have acknowledged, however, that the decision of whether a particular accommodation works an undue hardship on either an employer or union must be made by considering "the particular factual context of each case." *Anderson v. General Dynamics Convair Aerospace Division,* 589 F.2d 397, 400 (9th Cir. 1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of "actual imposition on co-workers or disruption of the work routine." *Id.* at 406–07. The *magnitude* as well as the *fact* of hardship must be determined by the examination of the facts of each case. The approach adopted by the district court is not inconsistent with these principles.[7]

The Steelworkers also contend that, even if the district court applied the correct standard to determine the magnitude of the accommodation cost, its conclusion was clearly erroneous. We disagree. A "widespread refusal to pay union dues" is

---

5. Section 19 of the NLRA, as amended by Act of Dec. 24, 1980, Pub.L. No. 96–593, 94 Stat. 3452, constitutes a sufficiently "clear and express indication from Congress" that any alleged unequal treatment between employees resulting from the "substituted charity" accommodation is permissible under Title VII. *Hardison,* 432 U.S at 79, 85, 97 S.Ct. at 2274, 2277.

6. In addition to the plaintiffs, three other employees have requested similar accommodation.

7. The approach is not inconsistent with that adopted in *Hardison.* In finding that the accommodation cost in *Hardison* was greater than *de minimis,* the Supreme Court considered factors unique to the particular facts of that case by considering the cost to the employer of implementing the accommodation, as well as the likelihood of other employees requesting similar accommodations. 432 U.S at 84 n.15, 97 S.Ct. at 2277 n.15.

sufficient to establish undue hardship, *Burns*, 589 F.2d at 407, but that is not the contention here. The Steelworkers have not established that the "substituted charity" accommodation, as applied here, will deprive the union of monies necessary for its maintenance or operation. The district court's conclusion is not clearly erroneous.

## III. THE CONSTITUTIONALITY OF SECTION 701(j) OF TITLE VII

■■■ The Steelworkers argue that section 701(j) as applied here violates the Establishment Clause.[8] The district court held that section 701(j) withstood constitutional attack under the three-pronged test enunciated in *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 772–73, 93 S.Ct. 2955, 2965, 39 L.Ed.2d 948 (1973). *See also Lemon v. Kurtzman*, 403 U.S 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). We agree. *Accord, Nottelson v. A. O. Smith Corp.*, 643 F.2d 445, 453–55 (7th Cir. 1981); *Burns v. Southern Pacific Transportation Co.*, 20 Empl.Prac.Dec. ¶ 30,184, at 11,977–78 (D.Ariz.1979), *on remand from* 589 F.2d 403 (9th Cir. 1978). *Contra, Anderson v. General Dynamics Convair Aerospace Division*, 489 F.Supp. 782, 784–91 (S.D.Cal.1980), *on remand from* 589 F.2d 397 (9th Cir. 1978); *Yott v. North American Rockwell Corp.*, 428 F.Supp. 763 (C.D.Cal.1977), *aff'd on other grounds*, 602 F.2d 904 (9th Cir. 1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980).

The Establishment Clause ensures government neutrality in matters of religion. *Gillette v. United States*, 401 U.S. 437, 449, 91 S.Ct. 828, 835, 28 L.Ed.2d 168 (1971). But government neutrality "is not so narrow a channel that the slightest deviation from an absolutely straight course leads to condemnation." *Sherbert v. Verner*, 374 U.S. 398, 422, 83 S.Ct. 1790, 1803, 10 L.Ed.2d 965 (1963) (Harlan, J., dissenting). Courts have defined the government's obligation as one of "benevolent neutrality." *Walz v. Tax Commission*, 397 U.S. 664, 669, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). While the government must avoid "partiality to any one group," *Zorach v. Clauson*, 343 U.S. 306, 313, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952), it may deviate from absolute rigidity to accommodate the religious practices of each group. *Walz*, 397 U.S. at 669, 90 S.Ct. at 1411.

■■■ Government can accommodate the beliefs and practices of members of minority religions without contravening the prohibitions of the Establishment Clause. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 234 n.22, 92 S.Ct. 1526, 1542 n.22, 32 L.Ed.2d 15 (1972) (exempting Amish children from state compulsory education laws); *Sherbert v. Verner*, 374 U.S. 398, 409, 83 S.Ct. 1790, 1796, 10 L.Ed.2d 965 (1963) (exempting Seventh-Day Adventists from state unemployment compensation requirements). Government may legitimately enforce accommodations of religious beliefs when the accommodation reflects the "obligation of neutrality in the face of religious differences," and does not constitute "sponsorship, financial support, [or] active involvement of the sovereign in religious activities" with which the Establishment Clause is mainly concerned. *Wisconsin v. Yoder*, 406 U.S. at 234 n.22, 92 S.Ct. at 1542 n.22; *Walz v. Tax Commission*, 397 U.S. at 668, 90 S.Ct. at 1411; *Sherbert v. Verner*, 374 U.S. at 409, 83 S.Ct. at 1796.

---

8. The plaintiffs contend that the constitutional validity of § 701(j) as applied here has been determined conclusively by the Supreme Court's dismissal of the appeal in *Rankins v. Comm'n on Professional Competence*, 24 Cal.3d 167, 593 P.2d 852, 154 Cal.Rptr. 907, *appeal dismissed*, 444 U.S. 986, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979). There, the California state constitutional employment discrimination provision, construed to require the same accommodations as those required by Title VII's § 701(j), was held not to offend the Establishment Clause in requiring a school district to accommodate a teacher who refused to work on religious holidays. The dismissal of the appeal in *Rankins* binds this court only on "the precise issues presented and necessarily decided." *Mandel v. Bradley*, 432 U.S 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). Because this case and *Rankins* involve entirely different kinds of religious accommodations, the constitutional dimension of each is necessarily different.

Like the accommodations allowed in *Sherbert v. Verner* and *Wisconsin v. Yoder*, the substituted charity accommodation satisfies these requirements. By exempting the plaintiffs from union membership or the payment of mandatory union dues, the accommodation places the plaintiffs on an equal footing with other employees whose religious convictions find no impediment in the workplace. To this extent, the accommodation reflects governmental neutrality in the face of religious differences. Further, the substituted charity accommodation does not involve government "sponsorship" or "financial support" of the Seventh-Day Adventist religion: the accommodation requires that the plaintiffs suffer the same economic loss as their co-workers who are not similarly restricted in paying union dues or in obtaining union membership. The accommodation demands neither direct nor indirect financial support of the plaintiffs' religion by the government, and cannot be reasonably construed as actively advancing or assisting their religion.

This same conclusion is compelled under the test enunciated in *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 772–73, 93 S.Ct. 2955, 2965, 39 L.Ed.2d 948 (1973). The *Nyquist* test, typically applied to state legislation, requires that for section 701(j) to be consistent with the demands of the Establishment Clause, it must (1) reflect a clearly secular purpose, (2) have a primary effect that neither inhibits nor advances religion, and (3) avoid excessive government entanglement with religion.[9]

### 1. *Legislative Purpose*

The primary motivation for the enactment of section 701(j) was to resolve many of the issues left open by prior "Sabbatarian" cases, where employees refused to work on their Sabbath and requested that their employers accommodate them. *Hardison*, 432 U.S. at 73–74, 97 S.Ct. at 2271. The Steelworkers contend that because section 701(j) was intended to secure special treatment for Sabbatarians and other religious proponents, the legislation has an improper sectarian purpose.

Although section 701(j)'s enactment may have resolved certain problems confronting sectarians, this alone is insufficient to establish that the legislation lacks a clearly secular purpose. *McGowan v. Maryland*, 366 U.S. 420, 445, 81 S.Ct. 1101, 1115, 6 L.Ed.2d 393 (1961); *Stone v. Graham*, —— U.S. ——, 101 S.Ct. 192, 195, 66 L.Ed.2d 199 (1980) (Rehnquist, J., dissenting). Section 701(j) was intended to promote Title VII's broader policy of prohibiting discrimination in employment. The bill's sponsor in the Senate, recognizing the problems confronting Sabbatarians in particular, stated that the legislation was intended to "assure that freedom from religious discrimination in the employment of workers is for all time guaranteed in law." 118 Cong.Rec. 705. Section 701(j) functions to "secure equal economic opportunity to members of minority religions."[10] *Hardison*, 432 U.S. at 90 n.4, 97 S.Ct. at 2280 n.4 (Marshall, J., dissenting). *Cf. Rankins v. Commission on Professional Competence*, 24 Cal.3d 167, 177–78, 593 P.2d 852, 859, 154 Cal.Rptr. 907, 913–14 (recognizing as secular the purpose of "promot[ing] equal employment opportunities for members of all religious faiths"), *appeal dismissed*, 444 U.S. 986, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979). It therefore has a legitimate secular purpose.

### 2. *Primary Effect*

The Steelworkers contend that the substituted charity accommodation has the primary effect of advancing the plaintiffs' re-

---

9. The Steelworkers' attack on § 701(j) as applied presents an apparent obstacle to application of the *Nyquist* test, as each element of the test normally requires an examination of the legislation as a whole. Because the "reasonable accommodation" and "undue hardship" provisions of § 701(j) operate uniquely in each case, the narrow attack on § 701(j) in this case is appropriate. Consequently, to the extent it is possible, we apply the *Nyquist* test to determine the legitimacy of § 701(j) as applied.

10. The legislative history to § 19 of the NLRA, as amended by Act of Dec. 24, 1980, Pub.L. No. 96–593, 94 Stat. 3452, reflects this same broad ameliorative purpose. *See* 126 Cong.Rec. H763 (daily ed. Feb. 11, 1980) (remarks of Rep. Duncan).

ligion by conferring various alleged economic benefits. It is argued that as a consequence of the accommodation, the plaintiffs have a greater choice than their co-workers in determining how their money is spent, and are more easily able to make charitable contributions.

We reject this argument. It confuses ancillary or incidental benefits with primary benefits to those accommodated. It could be argued, for example, that the exemption allowed the Amish children in *Wisconsin v. Yoder* permitted the children to contribute additional economic benefit to their families, and that the exemption allowed in *Sherbert v. Verner* permitted the Seventh-Day Adventist to exercise a greater choice in determining which day of the week was to be free of employment responsibilities.

The substituted charity accommodation allows the plaintiffs to work without violating their religious beliefs, at a cost equivalent to that paid by their co-workers without similar beliefs. It neither increases nor decreases the advantages of membership in the Seventh-Day Adventist faith in a manner so substantial and direct that it "advances" or "inhibits" the plaintiffs' religion.

The Steelworkers also contend that the accommodation violates the Establishment Clause because it will ultimately result in either the union curtailing necessary services, or forcing the accommodation cost on other employees. In either case, the Steelworkers argue that the plaintiffs receive the benefit of their religious beliefs at the expense of their co-workers. As a result, it is urged that the accommodation impermissibly places the burdens of accommodation on unaccommodated private parties.

A religious accommodation does not violate the Establishment Clause merely because it can be construed in some abstract way as placing an inappreciable but inevitable burden on those not accommodated. Exemption of conscientious objectors from military conscription has been upheld despite the effect of requiring nonobjectors to serve in their stead. *Gillette v. United States*, 401 U.S. 437, 452 n.17, 91 S.Ct. 828,

838 n.17, 28 L.Ed.2d 168 (1971); *Selective Draft Law Cases*, 245 U.S. 366, 389–90, 38 S.Ct. 159, 165, 62 L.Ed. 349 (1918). Sectarian institutions are exempt from the payment of property taxes, even though the effect may be to increase marginally the property taxes paid by unaccommodated private citizens. *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). Sunday closing laws have been upheld even though their effect may be to burden those who sincerely observe another Sabbath. *Gallagher v. Crown Kosher Super Market*, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961); *Hardison*, 432 U.S. at 96 n.13, 97 S.Ct. at 2283 n.13 (Marshall, J., dissenting).

The substituted charity does not have a primary effect which either advances or inhibits the plaintiffs' religion.

### 3. Government Entanglement

Nor do we find that the accommodation here requires that the government become impermissibly entangled with the accommodation's administration. The Establishment Clause prohibits only *excessive* government entanglement. *Walz v. Tax Commission*, 397 U.S. 664, 674–75, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). The implementation of the substituted charity accommodation requires a minimal amount of supervision and administrative cost. Once the sincerity of a religious objector's belief is established, the only administrative burden involves the employee and the union agreeing on a mutually acceptable charity. The Steelworkers have not demonstrated that the burden of administering this accommodation involves sufficiently significant amounts of time or money or that the government involvement is sufficiently "comprehensive, discriminating, and continuing" to draw into question the validity of the accommodation. *Lemon v. Kurtzman*, 403 U.S. 602, 619, 91 S.Ct. 2105, 2114, 29 L.Ed. 745 (1971).

Affirmed.