**Gerald PINSKER, on behalf of himself and all others similarly situated, Plaintiff,**

**and**

**Aurora Educational Association, Plaintiff/Intervenor,**

v.

**JOINT DISTRICT NO. 28J OF ADAMS AND ARAPAHOE COUNTIES, Defendant.**

**Civ. A. No. 81–JM–2047.**

United States District Court, D. Colorado.

Jan. 12, 1983.

William P. Bethke, Larry F. Hobbs, Denver, Colo., for plaintiff and plaintiff/intervenor.

Bruce W. Sattler, Holland & Hart, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

MOORE, District Judge.

THIS MATTER is before me pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.[1] The Plaintiff is a tenured teacher employed by the Defendant school district who claims the Defendant's policy regarding leave time for teachers interferes with the free exercise of his Jewish faith. The claim arises because the leave policy does not permit Plaintiff paid leave to attend all religious services he would like to attend on the holy days of Yom Kippur and Rosh Hashanah. The Defendant contends Mr. Pinsker's religious freedom is not impaired by its policy because he is free to take unpaid leave to attend religious services. Additionally, Defendant contends present policy permits two personal leave days[2] with pay for each teacher each year. These personal leave days can be used by teachers for any number of personal reasons, including attendance at religious services. Plaintiff counters by urging that by virtue of the school calendar, Christian teachers are permitted certain of their religious holidays without loss of pay *and* without resort to their two personal leave days. It thus appears to me the issue here is whether the policy which requires the Plaintiff and other Jewish teachers to relinquish a day's pay for the third and subsequent days they wish to attend religious services during the school year constitutes an impermissible interference with their right to the free exercise of religion.

The essential facts are not complicated. The contracts governing the employment of teachers are regularly negotiated between the Defendant and the bargaining unit which represents the teachers. Historically, among the items bargained has been the attendance requirements which all teachers must obey. In the recent bargaining process, there has been an effort on the part of teacher negotiators to establish more days within the school year on which teachers could be granted leave with pay to attend to personal business. This effort has met with resistance by the Defendant to the point where until the present contract was agreed upon, only one paid personal leave day was permitted each school year. Under the express language of the current contract, two such days are permitted; but no more than 20 teachers are to be permitted such leave on any given day.[3] Notwithstanding, the limitation has not been enforced by Defendant to the extent that no teacher seeking paid leave for religious purpose has been refused, regardless of the number of teachers seeking leave on that day.[4]

Notwithstanding the present leave policy, a person holding beliefs akin to Mr. Pinsker is still faced with a dilemma of sorts. For many Jews it is important to observe Yom Kippur and Rosh Hashanah by attending the temple for two days on each holiday rather than only one. While expert testimony indicates it is not regarded mandatory that Mr. Pinsker spend two consecutive days in the synagogue, such observance is a traditional and common part of his faith. The same expert, Rabbi Steven Foster, also stated, however, economics should never be considered by a Jew in deciding whether to attend the synagogue during the Holy

1. Another claim founded upon 42 U.S.C. § 2000e–5(f)(3) was dismissed at the conclusion of the presentation of Plaintiff's evidence. His request for reconsideration is denied, and I shall stand upon my oral findings. *See E.E. O.C. v. Picoma Industries,* 495 F.Supp. 1 (S.D. Ohio, E.D., 1978).

2. These leave days are established in the contract of employment negotiated between the Aurora Education Association (of which Plaintiff is a member) and the Defendant school board. Up to the time of the present contract, only one such day was permitted; however, it appears undisputed teachers are not and have not been denied the right to take time off without pay.

3. The evidence indicates there is no uniformity in the Denver area school districts as to personal leave days. Each district has a different leave policy; however, I believe it fair to conclude the Defendant's leave policy is the most conservative of those made evident to me.

4. Circumstances reasonably indicate this lenient practice may have been a product of this suit.

Days. It must therefore be assumed that so long as a Jew can attend services during the Holy Days, he or she can satisfy religious demands and scruples even though such attendance causes a loss of income.

Plaintiff attempts to compare his situation with that of fellow teachers of Christian faiths, perhaps to underscore his perception of the wrong he believes committed rather than for any other purpose. To that end, then, it is evident that because of school-wide vacations, Christian teachers are not required to consider giving up pay to attend Christmas services. Moreover, because of past spring vacation schedules and parent-teacher conferences, some Christian teachers have not been scheduled to work on Good Friday.[5]

Plaintiff introduced no evidence which indicates the scheduling of either spring vacations or the parent-teacher conferences was purposefully designed to coincide .with Good Friday or any other religious holiday. Indeed, because this coincidence historically has not been an annual event, one may logically presume to the contrary. Yet, it cannot be gainsaid that the scheduling of the December vacation, at which time no teacher works, is designed specifically to concur with Christmas. Yet, because of my analysis of the issues, I do not believe this a significant fact.

■ Because the facts clearly show the Defendant's policy never prevented Mr. Pinsker from making his religious observance, the question to be decided resolves itself into one of whether the economic impact of losing a day's wages in order to attend a religious service is equatable to a denial of the right to worship. Neither side has cited any authority which directly deals with this question, and indeed none appears to exist; however, both sides try to analyze support for their position from other cases. After considering the arguments, I have concluded the question must be decided in the negative.

■ It is patently clear that no person may constitutionally be put in the dilemma of choosing between employment and religion. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1962); *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1980); *Rankins v. Commission on Professional Competence*, 24 Cal.3d 167, 154 Cal.Rptr. 907, 593 P.2d 852 (1979). An employer who punishes an employee by placing the latter in a position in which he or she must ignore a tenet of faith in order to retain employment violates 42 U.S.C. § 2000e–2(a)(1). *Brown v. General Motors*, 601 F.2d 956 (8th Cir.1979). *Compare also: Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239 (9th Cir.1981); *Nottlelson v. Smith Steel Workers*, 643 F.2d 445 (7th Cir.1981). Yet, with the foregoing as postulates, how do they fit into this case?

The governing standard is set forth in *Thomas, supra:*

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

The standard, though clear, was developed in a situation in which the choice given the "adherent" was to. violate his religious belief for the sake of continued employment or relinquish employment to obey a tenet of faith. That is not the case here.

The attendance policy in question does not cause Mr. Pinsker to risk his job in order to attend the synagogue during Yom Kippur and Rosh Hashanah. He is free to worship as his faith demands, and should he choose to attend only one service on each of the Holy Days, he would be able to do so without loss of any pay. Admittedly, if he wants to go to temple for more than one day, or should he use his personal leave days for other personal affairs, his attend-

---

**5.** For the sake of Plaintiff's point, there is no evidence that Good Friday has a religious significance comparable to Yom Kippur and Rosh Hashanah in terms of the need to attend services.

ance at services would cause him to lose pay.[6] Yet, according to the tenets of his faith, the loss of that pay cannot involve an abuse of his religious belief because for him, economic and theological considerations are mutually exclusive.

It is also evident that this is not a case in which Mr. Pinsker's employment was once religiously tolerable and then became unacceptable by change of conditions. Indeed, at the outset of his employment, the policy was even more stringent than it is at present. That policy, assumably known to Mr. Pinsker at the time, was not a bar to acceptance of employment by him, and the change has favorably liberalized conditions for *all* teachers.

Consequently, because Mr. Pinsker is free to practice his faith and because he accepted his employment despite the existence of the impediments of which he now complains, it is difficult to see how the policy becomes a "burden" upon the exercise of his religion. Moreover, the Defendant has convinced me that were there a burden suffered by Mr. Pinsker, the means chosen by the Defendant to deal with it are the least restrictive means of dealing with the need to have continuity of attendance by teachers.[7]

It is uncontroverted here that the Defendant has a legitimate interest in requiring the attendance of teachers. Without such attendance, the school district could not function, and the students would suffer. The teaching of children is not like the assembly of widgets. Where assembly line employees may be interchangeable to the point at which the continuous attendance of one worker is not essential, the continuity of instruction is of importance to the educational process. Even though a substitute teacher may be called in from time to time,

there is a diminution—however grave or slight—in the educational process when a regular teacher is absent. For this reason alone, the attendance of teachers is of greater concern to the Defendant than attendance of employees might be to other employers.

It is also evident that it would be impossible for the Defendant to deal with the religious needs of every conceivable faith. Simply because Mr. Pinsker would be satisfied by the addition of one more personal leave day, for example, does not mean that one more day would satisfy the needs of a member of the World-Wide Church of God, whose faith requires attendance at more religious services than Mr. Pinsker's faith requires of him. Moreover, while he would be glad to pay the cost of a substitute teacher to gain an additional paid leave day, this could logically be regarded as a burden of perhaps a larger degree by someone else. His suggestion that a teacher be required to perform additional services in exchange for paid days off would appear to be problematic inasmuch as the evidence demonstrates the time does not exist during regular school days for performance of other than regularly assigned tasks.

I am satisfied that while the limitation of two days' paid personal leave for teachers has overtones of arbitrariness, it cannot be overlooked that the allowance of only two days is a creature of the give and take of negotiation which has a legitimate compelling public interest at base. A line must be drawn in order to serve the needs of the students for whose benefit the school system exists, and the line drawn in this case is neither onerous nor constitutionally impermissible. *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961).

---

6. In view of present policy, and until a new contract is negotiated, Mr. Pinsker would not have to "lie," as he suggests, by seeking sick leave to observe the Holy Days. While the moral dilemma that such a ploy brings about is readily apparent, Mr. Pinsker has not resorted to it in the past, nor would he do so in the future, because of his religious convictions. Consequently, I consider his "lie" argument a nonexistent issue.

7. In his opening statement, Mr. Pinsker's counsel stated the Plaintiff seeks "further accommodation" from the Defendant by acceptance of a number of Mr. Pinsker's suggestions for alteration of policy. The statement is an admission that accommodation has been made by the Defendant and that it is recognized as such by the Plaintiff.

On the basis of the foregoing findings and conclusions, it is

ORDERED that judgment be entered in favor of the Defendant and against the Plaintiff on all claims raised in the complaint, plus costs of litigation.