Shari Shapiro GORDON, Plaintiff,

v.

MCI TELECOMMUNICATIONS CORPORATION, Defendant.

No. 90 Civ. 4223 (RWS).

United States District Court, S.D. of New York.

June 3, 1992.

Sharfman, Shanman, Poret & Siviglia, P.C., (Daniel A. Ross, of counsel), New York City, for plaintiff.

Orrick, Herrington & Sutcliffe, (Michael Delikat, of counsel), New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Shari Shapiro Gordon ("Gordon") brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(j) and 2000e–2(a)(1) and § 296(10)(c) of the New York Human Rights Law claiming that defendant MCI Telecommunications Corp. ("MCI") discriminated against her on the basis of religion. MCI now moves for an order pursuant to Fed.R.Civ.P. 56 granting summary judgment in its favor and dismissing the complaint. For the following reasons, the motion is denied.

*The Parties*

Gordon is an Orthodox Jewish woman who is a resident of Forest Hills, New York.

MCI is a Delaware corporation with offices at 757 Third Avenue in New York City, New York.

*Prior Proceedings*

Gordon filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 2, 1989. After receiving a Right to Sue Letter from the EEOC on May 7, 1990, Gordon filed a timely complaint in this court on June 22, 1990. MCI filed the present motion on December 13, 1991. Oral argument was heard and the matter considered fully submitted on March 11, 1992.

*The Facts*

Unless otherwise indicated, the following facts are undisputed for purposes of this motion.

Gordon is an Orthodox Jewish woman who closely observes the Sabbath. Due to her religious beliefs, she is unable to cook, ride in a car, write, carry money or turn on electricity from sundown on Friday until sundown on Saturday. During the fall and winter months, Gordon must leave work on Fridays in sufficient time to be home and prepare her house for the Sabbath by sundown.

In April 1989, Gordon contacted the employment agency of Bennett & Braun to assist her in finding a job in the field of personnel or human resources. She met with Mark Fiore, a Bennett & Braun employee, who informed her of an opening in the Human Resources Department at MCI.

On April 5, 1989, Gordon interviewed for the position of Staff Assistant in the Human Resources Department of MCI's New York Offices. She met with MCI employees Catthya Britt ("Britt"), then a "Staff Generalist" in Human Resources, and Judi Lindower, then Manager of the department.

On April 6, 1989, Gordon was invited for a second round of interviews at MCI. On this date, Gordon met with Holly Kanski Simboli ("Simboli"), the Staff Assistant Gordon was being interviewed to replace.

Among the responsibilities of the Staff Assistant is the distribution of payroll on alternate Thursday afternoons and the resolution of disputes arising from payroll discrepancies. According to MCI, the Staff Assistant generally handles these disputes on Thursday afternoon on payroll weeks ("payroll Thursdays"), throughout the day on Friday of those weeks ("payroll Fridays") and sometimes on the early days of the following week. MCI claims that Gordon was informed of these responsibilities and that the pace of work on Fridays was very busy. Gordon denies that either these topics or the subject of hours were discussed with her prior to April 7, 1989.

Although she had informed Fiore about her religious practices, Gordon made no mention of her needs to anyone at MCI during the interview process. The issue was first raised with MCI on April 6, 1989 when MCI called Bennett & Braun to extend an offer to Gordon. At that time, Fiore informed MCI that Gordon was an observant Orthodox Jew and would need to leave work early on Friday afternoons during the fall and winter months. Fiore telephoned Gordon that evening and told her about MCI's offer. He also told her that Lindower was hesitant about accommodating her religious practice but that she would speak to headquarters in Ryebrook.

In the early morning of April 7, 1989, Fiore again telephoned Gordon and told her that MCI "would not be able to—that they would not allow [her] to leave early, that they wouldn't be able to do that...." Gordon Aff.Dep. at 56–57. Gordon informed Fiore that she could not accept the position unless she could leave early on Fridays during the fall and winter. Taking into account a commute of approximately 45 minutes to one hour, "early" would mean leaving work approximately 45 minutes to three hours before MCI's 5:30 close of business, depending on the time of sundown on a given Friday.

As recommended by Fiore, Gordon telephoned Lindower and spoke with her directly. Gordon told Lindower that she was very excited about the job offer, but that she understood that there was a problem. Gordon claims that she told Lindower that she could not compromise her Sabbath observance needs and Lindower said that she did not think that MCI would be able to compromise its requirement that Gordon work a full day every Friday. Lindower claims that she asked Gordon for more information about her Sabbath observance needs but that Gordon was "non-responsive." Gordon denies that Lindower ever made any such inquiries.

Gordon informed Fiore that she could not accept MCI's offer "based on the way it was laid out." Gordon Dep. at 71. On May 8, 1989, she obtained a position in a personnel office of another employer.

*Discussion*

### 1. Standard for Summary Judgment

The standard to be applied in determining motions for summary judgment is well known.

Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the non-moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

*Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *see also Bay,* 936 F.2d at 116.

To defeat a motion for summary judgment, the party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts" as to issues on which the moving party has carried its burden or those on which the non-moving party bears the burden of proof. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Rather, she must establish the existence of enough evidence such that a jury could return a verdict in her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–51, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986).

### 2. Religious Discrimination under Title VII

■ Under Title VII it is unlawful for an employer to fail or refuse to hire an individual on the basis of that individual's religious observances, practices or beliefs unless the employer demonstrates that it is unable to "reasonably accommodate" the prospective employee's religious observance or practice without "undue hardship on the conduct of the employer's business." 42 U.S.C. §§ 2000e(j), 2000e–2(a)(1). The plaintiff bringing a religious discrimination claim under Title VII bears the initial burden of establishing a *prima facie* case by proving that: (1) she has a sincere religious belief that conflicted with an employment requirement; (2) she informed her prospective employer of her religious views or practices; and (3) she was not hired because of her inability to comply with the conflicting employment requirement. Once the employee has established a *prima facie* case, the burden shifts to the employer to prove either that it made good faith efforts to accommodate the employee's religious practices and beliefs or that it could not reasonably do so without incurring "undue hardship." *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir.1985), *aff'd and remanded,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); *Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1486 (10th Cir. 1989), *cert. denied sub nom., Nobel–Sysco Foods Services Co. v. Toledo,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990); *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1512 (9th Cir.1989).

#### A. Prima Facie Case

■ MCI first contends that it is entitled to summary judgment because Gordon cannot carry her burden of establishing a *prima facie* case. MCI takes issue only with the third element of the test: Because Gordon "rejected" the job offer before MCI had a chance to suggest accommodations, MCI argues, no reasonable trier of fact could find that MCI failed or refused to hire Gordon because of her need to leave work early on fall and winter Fridays.

It is undisputed that MCI extended an offer to Gordon through Fiore on April 6, 1989, that MCI never formally "withdrew" the offer and that Gordon declined to accept the position as offered. However, viewing the facts in the light most favorable to Gordon, it is possible to infer that MCI's offer was withdrawn by MCI's indication that it was not possible to compromise its terms.

According to Gordon's affidavit and deposition testimony, MCI's offer was conditioned on Gordon's presence at work until 5:30 p.m. every Friday throughout the year. Gordon's unrebutted assertion is that both Fiore and Lindower indicated that MCI would not be able to compromise the attendance requirement, leaving it up to Gordon to compromise her practices if she wanted the position. *See, e.g.,* Gordon Aff. ¶¶ 2, 5, 7. A reasonable trier of fact could reasonably infer that MCI refused to hire Gordon unless she complied with the Friday attendance requirement.

MCI's attempt to suggest that it would have explored possible accommodations is unsupported by any evidence that MCI contemplated any compromise. Giving the benefit of the doubt to Gordon, Lindower never even attempted to ascertain information that would be relevant to possible accommodations, such as the details of Gordon's Sabbath observance needs. Finally, MCI's assertion that Gordon's failure to suggest any accommodations impugns her ability to make a *prima facie* case is without merit. Although an employee has the duty to cooperate with an employer's efforts at accommodation, *see Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986); *Toledo*, 892 F.2d at 1488, "Title VII complainants are under no burden to propose to their employers specific means of accommodating their religious practices." *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 145 (5th Cir.1982); *see Toledo*, 892 F.2d at 1488 (employer bears statutory burden to accommodate; employee's duty to cooperate is irrelevant until employer satisfies its initial obligation).

The facts as presented on this motion would support the inference that MCI refused to hire Gordon unless she agreed to work until 5:30 every Friday throughout the year. By its terms, MCI's offer forced Gordon to choose between her religious beliefs and practices, thereby vitiating its very existence for purposes of Title VII. *Cf. Philbrook*, 757 F.2d at 482–83 (suggesting that Title VII protects against just such an ultimatum). Gordon has therefore raised facts upon which a reasonable trier of fact could conclude that she has established a *prima facie* case.

### B. Undue Hardship

In the alternative, MCI contends that it is entitled to summary judgment because it could not reasonably accommodate Gordon's Sabbath observance practices without incurring "undue hardship" in the form of: (1) decreased efficiency in the operation of the Human Resources Department; (2) added financial costs; and (3) preferential treatment of Gordon at the expense of other MCI employees.[1]

If substantiated by facts, MCI's assertion that accommodating Gordon's Sabbath observance would cause lost efficiency, financial expense and preferential treatment could support its claim of undue hardship. Although the term "undue hardship" is not defined in Title VII, the Supreme Court has held that an accommodation that results in an imposition on other workers or requires an employer to bear more than *de minimis* costs in terms of money or efficiency creates an undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977). At the same time, " 'an employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine.' " *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) (quoting *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975), *cert. denied*, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988)).

---

**1.** MCI does not deny that it made no attempts at accommodation.

Whether accommodating an employee's religious practices would cause an employer undue hardship must be determined based on "the particular factual context of each case." *See E.E.O.C. v. Universal Mfg. Corp.*, 914 F.2d 71, 74 (5th Cir.1990); *Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir.), *cert. denied sub nom., United Steelworkers of America v. Tooley*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). An employer must present evidence of actual undue hardship and may not rely on speculation or "hypothetical hardship." *Toledo*, 892 F.2d at 1481; *Smith*, 827 F.2d at 1086; *Philbrook*, 757 F.2d at 484. Courts have found undue hardship where, for example, the evidence established that accommodating the plaintiff's religious needs would result in denying the needs, rights or preferences of other employees, *e.g., Hardison*, 432 U.S. at 80–81, 97 S.Ct. at 2274–75; *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988) (undue hardship to require employer to force employees to switch shifts permanently to accommodate another employee's Sabbath observance), or would involve additional costs to the employer in the form of lost efficiency in other jobs or higher wages, *Hardison*, 432 U.S. at 84–85, 97 S.Ct. at 2276–77. While it is "conceivable" that an employer could carry its burden of proving undue hardship where no attempts were made at accommodation, "such situations will also be rare." *Toledo*, 892 F.2d at 1481.

MCI cites what it apparently contends is the universe of conceivable ways in which it could accommodate Gordon's Sabbath observance needs, maintaining that any of these alternatives would cause undue hardship within the meaning of *Hardison* and its progeny. Specifically, MCI claims that hiring a temporary worker to cover Gordon's missed hours on Fridays would result in inefficiency, financial cost and employee discontent; delegating Gordon's duties to another MCI employee during those hours would work a preference in favor of Gordon on the basis of religion and would disrupt the operation of the department; and allowing Gordon to "make up" the missed hours by working overtime at other points during the week would be ineffective because the Staff Assistant's attendance on Friday afternoons is crucial. To evaluate this claim, it is necessary to review the Staff Assistant's specific responsibilities as well as the details of Gordon's Sabbath observance needs.

The Staff Assistant position entails the performance of ten duties. In addition to the bi-weekly payroll distribution and payroll dispute resolution functions, the Staff Assistant is responsible for, among other things, processing, inputting and editing employee data in the Human Resources Information System; maintaining employee personnel records; and administering workers compensation and disability programs. MCI Ex. 1 (Staff Assistant "Job Posting"). According to Simboli, data entry accounts for approximately 40% of the Staff Assistant's day, and maintaining employee records accounts for at least 20% of his or her time. Simboli Dep. 55–56, 65. While it must be done daily, data entry can be done at any time of the day, including before or after hours. *Id.* at 55–56. With the exception of payroll-related functions, none of the Staff Assistant's duties require attention on any specific day of the week. *See id.* at 66–74. With respect to payroll-related functions, Simboli typically spent one hour distributing paychecks on alternate Thursday afternoons, and devoted late "payroll Thursday" afternoons, "payroll Fridays" and sometimes the early days of the following week to reconciling payroll disputes. *Id.* at 56–57, 117–19. Although she "may have worked a little bit of overtime" on paydays, she does not recall ever working overtime on a Friday. *Id.* at 99.

In April 1989, the Human Resources Department was staffed by a Manager, a Staff Generalist and a Staff Assistant, each of whom performed discrete functions. These employees were not "cross-trained" to perform each other's functions. Britt Aff. ¶ 4. Only the Manager and the Staff Assistant had computer access to MCI's payroll system. According to MCI, "[t]here were many occasions when the Staff Assistant would have to spend most of the day on Fridays following payday

resolving [payroll disputes]." Lindower Aff. ¶ 1; *see also* Britt Aff. ¶ 7. MCI asserts that it is essential to resolve these disputes quickly because of the effect of paycheck discrepancies on employee morale. Britt Aff. ¶ 8.

Gordon's Sabbath observance practice would necessitate her early departure on thirteen "payroll" Fridays. Depending on the time of sundown on a given Friday, she would have to leave between 45 minutes and three hours before MCI's close of business at 5:30 p.m. Gordon Aff. ¶ 9.[2] Gordon's religion does not prevent her from working her full schedule on other days of the week, from working after hours any day other than Friday or from working before hours any day, including Friday.

Understandably, Gordon has submitted no evidence to rebut MCI's characterization of the Staff Assistant's duties. Nevertheless, drawing every inference in Gordon's favor, MCI has failed to carry its burden of proving that accommodating Gordon's Sabbath observance practices would cause it to suffer undue hardship. It has not presented facts necessary to evaluate the potential hardship that would flow from any of its "proposed" accommodations. Most significantly, MCI has submitted no evidence proving that payroll disputes actually arose or demanded immediate attention after 2:30 p.m. on Fridays or, if so, how frequently.[3] The affirmations of Lindower and Britt that payroll resolution often took most of the day on Fridays is simply not specific enough for a trier of fact to conclude that Gordon's departure 45 minutes to three hours prior to MCI's closing time would result in "undue hardship," or any hardship at all.

For example, without evidence of the actual demands placed on the Staff Assistant from 2:30 p.m. to 5:30 p.m. on Fridays, it is not possible to evaluate the alleged loss in efficiency that MCI would suffer if it hired a temporary worker to cover the time missed by Gordon. Even assuming the truth of MCI's assertion that a temporary worker could not perform the Staff Assistant's payroll or data inputting functions, any claim of lost efficiency remains speculative in the absence of evidence that the Staff Assistant was actually called upon to perform such functions in the late afternoon on Fridays.[4] Likewise, lacking such evidence, it is not possible to evaluate whether having another MCI employee cover those hours would affect the efficiency of the department or impinge on the other duties for which that employee was responsible. The absence of this evidence also

---

**2.** Based on the Jewish Calendar for September 1989 through June 1991, *see* Gordon Ex. 1, Gordon submits that her schedule of missed hours on "payroll Fridays" would have been the following:

| "Payroll Friday" | Candle–Lighting Time | Time to Leave Work | Hours Off |
| --- | --- | --- | --- |
| 10/6/89 | 6:10 p.m. | 4:45 p.m. | 45 minutes |
| 10/20/89 | 5:49 p.m. | 4:30 p.m. | 1 hour |
| 11/3/89 | 4:31 p.m. | 3:00 p.m. | 2.5 hours |
| 11/17/89 | 4:17 p.m. | 2:45 p.m. | 2.75 hours |
| 12/1/89 | 4:10 p.m. | 2:30 p.m. | 3 hours |
| 12/15/89 | 4:10 p.m. | 2:30 p.m. | 3 hours |
| 12/29/89 | 4:17 p.m. | 2:45 p.m. | 2.75 hours |
| 1/12/90 | 4:46 p.m. | 3:15 p.m. | 2.5 hours |
| 1/26/90 | 5:04 p.m. | 3:30 p.m. | 2.25 hours |
| 2/9/90 | 5:20 p.m. | 4:00 p.m. | 1.5 hours |
| 2/23/90 | 5:36 p.m. | 4:00 p.m. | 1.5 hours |
| 3/23/90 | 5:51 p.m. | 4:30 p.m. | 1 hour |

Gordon Aff. ¶ 9. MCI does not dispute these calculations, but rather maintains that the number of hours missed is irrelevant.

**3.** "The *magnitude* as well as the *fact* of hardship" are relevant to the undue hardship inquiry. *Tooley,* 648 F.2d at 1243; *see Hardison,* 432 U.S. at 84, 97 S.Ct. at 2276.

**4.** With respect to the data inputting function, the evidence suggests that, although this was a task requiring daily attention, there was nothing special about Fridays after 2:30 p.m. As Simboli testified, data inputting could be done at any time, including before and after hours. The evidence shows that Gordon was available to work after hours every day of the week but

precludes assessment of the possibility that overtime work by Gordon would have compensated for her absences. Finally, MCI's claim that it would incur undue hardship in the form of the financial expense necessary to hire a temporary worker, if doing so were even feasible, is unsupported in fact. MCI has presented no evidence of the actual cost of hiring necessary coverage, *compare Brener*, 671 F.2d at 144 (testimony on record established that minimum cost to hire substitute would have been $14,000 per year), and has not taken into consideration the possibility that Gordon might have been willing to forego payment for any hours missed, thus defraying or possibly eliminating altogether any additional cost.

In view of these material issues of fact, MCI has failed to establish that, as a matter of law, accommodating Gordon's Sabbath observance practices would cause it to incur undue hardship. MCI's motion for summary judgment is therefore denied.

*Conclusion*

For the foregoing reasons, MCI's motion for an order granting summary judgment and dismissing the complaint is denied.

It is so ordered.

Friday, and before work and through lunch   every day of the week.