**Herman V. STERN, Plaintiff,**

v.

**TEAMSTERS "GENERAL" LOCAL UNION NO. 200, Duane Kraemer, Eugene Sheehan, Schmitz Ready Mix, Inc., and Allen D. Schmitz, Defendants.**

**No. 84–C–1517.**

United States District Court,
E.D. Wisconsin.

Jan. 17, 1986.

**1044**

Joseph H. Helm, Jr., Menomonee Falls, Wis., for plaintiff.

Stuart G. Grady and Darcy E. McManus, Grady Law Office, Port Washington, Wis., for defendants Schmitz Ready Mix, Inc., and Alan D. Schmitz.

Scott Soldon, Milwaukee, Wis., for defendant Teamsters General Local Union No. 200.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiff brings this action against his former employer and the recognized union at his former workplace. He alleges that Teamsters General Local Union # 200 convinced Schmitz Ready Mix, Inc. to fire him because, pursuant to his religious beliefs, the plaintiff refused to join the union or pay the equivalent of union dues to one of five nonreligious charities named as alternatives in the collective bargaining agreement. Defendants maintain that plaintiff was fired for an unexcused absence, or in the alternative, that defendants did everything the law requires in the way of accomodating plaintiff's religious beliefs. Defendants also argue that plaintiff's state law claims are barred because he failed to exhaust his state remedies. Plaintiff's complaint includes a federal claim under Title VII of the Civil Rights Act of 1964, a common law claim for wrongful discharge, and a claim under the Wisconsin Fair Employment Act. Wis.Stats. §§ 111.31–111.-395 (1983).

The parties stipulated that defendants Duane Kraemer and Eugene Sheehan were to be dismissed from this action. Currently pending are the other defendants' motions for summary judgment, plaintiff's motion for collateral estoppel, and a motion to amend the answer of defendants Schmitz Ready Mix and Allen D. Schmitz. Resolution of the other motions is unneccesary because the court will grant the defendants' motions for summary judgment. Resolving all disputed issues of fact in plaintiff's favor the court still finds that the defendants are entitled to judgment as a matter of law.

### RELEVANT FACTS

The facts are taken from the submissions of the parties. Plaintiff began full-time work for defendant Schmitz Ready Mix in

May of 1983. The Teamsters had a collective bargaining agreement with the company that required full-time employees to become union members. The plaintiff informed the union in August of 1983 that he would not join because of his religious beliefs. On August 25, 1983 the union told the plaintiff that a Congressional Act allowed employees with religious convictions against union membership to pay an amount equivalent to yearly dues to a charitable organization. At that time the union also requested information about plaintiff's religious affiliation and the basis for his bias against union membership.

On September 2, 1983 the plaintiff wrote the union asking for a copy of the Congressional Act. He also enclosed a check made out to a religious broadcaster. The union wrote back on September 20, 1983 refusing to provide a copy of the Act and rejecting the proffered donation because it was not directed to a nonreligious charity. The union demanded another check within a week and threatened to require the employer to terminate the plaintiff if he did not comply. On September 29, 1983 the union wrote the employer (Schmitz) requesting that plaintiff be terminated. Plaintiff again wrote the union on October 1, 1983 confirming that he was sending his dues to the broadcaster and agreeing to provide the union with the requested information if they would give him a copy of the Congressional Act.

The union wrote Schmitz on November 9, 1983 and requested that plaintiff be terminated pursuant to the collective bargaining agreement. Plaintiff met with a union representative on November 11, 1985 and plaintiff showed the union representative a copy of an Equal Employment Opportunity Commission guideline that appeared to allow him to donate to any charitable organization, regardless of religious affiliation. That same day the union sent Stern a copy of the Congressional Act and told him he could study it but that if he didn't pay his dues by November 18, 1983 the union would demand that his employer terminate him. That act restricted his alternatives to nonreligious and nonlabor charitable organizations.

On November 28, 1983 the union wrote plaintiff confirming that his own personal religious beliefs, rather than his church's position, prohibited his involvement in the union. The union offered to allow Stern to pay the equivalent of dues to some nonreligious charity and informed him the union was negotiating with Schmitz over an addendum to the bargaining agreement that would list three nonreligious charities to which someone who had religious objections to union membership could donate.

The union sent Schmitz a copy of the addendum shortly thereafter. The addendum tracked the language of the Congressional Act and allowed employees who were members of bona fide religious organizations with a history of objection to union membership to pay the equivalent of union dues to one of six charitable funds. There is no dispute that the addendum was specifically directed at Stern. The addendum was ratified to on December 20, 1983 and on December 21st the union sent Stern a copy of the new provision and demanded that he choose a charity no later than January 6, 1984.

Meanwhile, a conflict had apparently developed between Stern's employment with Schmitz and Stern's part-time snowplowing business. The employer informed plaintiff on or around December 21, 1983 that he would have to give priority to his job with Schmitz. On January 3, 1984 plaintiff called in sick. Later that day a fellow worker saw him plowing snow and his employer terminated him.

The parties dispute whether the snowplowing incident was the true basis for his dismissal. Plaintiff asserts that the decision of a Wisconsin unemployment compensation tribunal which found that plaintiff was not dismissed for "misconduct" as that term is defined in Wis.Stats. 108.04(5) (1983) should serve to collaterally estop the defendants from arguing he was dismissed for misconduct. Plaintiff's alleged misconduct would nonetheless be an issue at trial because this court is unconvinced that a

determination of misconduct for workers compensation purposes is helpful in the context of a wrongful discharge action. Resolution of that factual dispute is not, however, necessary. The court finds that, even if Stern was fired for his failure to join the union, the defendants did everything that was required of them before Stern was terminated.

## LEGAL ANALYSIS

The court will assume for the purpose of resolving the summary judgment motions that the reasons given for Stern's firing were pretextual, that the true reason for his dismissal was that his religious beliefs prevented him from joining the union and that he refused to pay the equivalent of union dues to one of the named charities. The defendants are nonetheless entitled to judgment as a matter of law.

Plaintiff's federal claim arises under Title VII in that he alleges he was fired because of his religious beliefs. 42 U.S.C. § 2000e–2. At trial plaintiff would need to establish a *prima facie* case that he was terminated because of his religious beliefs. If Stern did so the defendants would be required to produce some explanation or justification for the termination. Assuming plaintiff's snowplowing activities were merely used as a pretext, defendants would rely upon the plaintiff's failure to join the union or make an equivalent payment to a nonreligious, nonlabor charity. At that point there would no longer be a question of pretext in this lawsuit. The sole question would be whether an employer is justified in dismissing an employee pursuant to a collective bargaining agreement if, for religious reasons, that employee refused to join the union or, pursuant to that same labor agreement, refused to donate an amount equal to what he would pay in dues to a nonreligious charity.

In other words, were the defendants attempts to accomodate Stern's religious beliefs sufficient to protect them from a discrimination suit? The court finds that they were because the alternative they offered him has been approved by Congress. Section 19 of the National Labor Relations Act was amended on December 24, 1980 to read:

> Any employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund exempt from taxation under section 501(c)(3) of Title 26, chosen by such employee from a list of at least three such funds, designated in such contract or if the contract fails to designate such funds, then to any such fund chosen by the employee.

29 U.S.C. § 169 (1980)

The legislative history of the bill reflects Congressional intent to address the type of claim now before this court.

> "Members of the Seventh-day Adventist Church for example cannot, consistent with the traditional and historic teachings of that church, pay dues to unions. Other churches share the same traditional belief of prohibiting cooperation with the union selected by majority vote to represent their interests.

> The bill would accommodate the religious beliefs of these persons and thereby reconcile the National Labor Relations Act with section 701(j) of the Equal Employment Opportunity Act. Thus, the bill reflects the legislative determination that the alternative to the payment of union dues provided in the bill 'reasonably accommodate(s) ... an employee ... religious observance or practice without undue hardship.' Title VII, section 701(j), 43 U.S.C. section 2000e(j). The option of allowing a qualifying individual the ability to pay the equivalent of dues to a

nonreligious charity clearly constitutes a 'reasonable accommodation' to the individual's religious beliefs.

H.R.Rep. No. 496, 96th Cong., 2d Sess. *reprinted in* 1980 U.S.Cong. & Ad.News 7158, 7159.

■ The addendum at issue here closely tracked the language in 29 U.S.C. § 169. Both the words of the statute and the legislative history reveal that Congress has approved the accomodation the defendants offered the plaintiff. Stern may have preferred to give to a religious broadcaster but Congress has seen fit to limit the alternatives to nonreligious and nonlabor charities. Even if Stern was fired because he failed to join the union or donate to an alternative charity the defendants were nonetheless within their rights.

Stern contends that the statute does not apply to his situation for a variety of reasons. Principally he relies upon an Equal Employment Opportunity Commission Guideline which predates the statute quoted above by one month. That guideline reads:

> "When an employee's religious practices to (sic) not permit compliance with such a provision, the labor organization should accommodate the employee by not requiring the employee to join the organization and by permitting him or her to donate a sum equivalent to dues to a charitable organization."

29. C.F.R. § 1605.2(d)(2) (1985)

Plaintiff contends that this guideline allows him to donate to any charity, religious or nonreligious. In addition he cites the case of *Yott v. North American Rockwell Corp.*, 602 F.2d 904 (9th Cir.1979) where the court held that an offer by an employer and union to allow a plaintiff to make payment to his own church was a reasonable accomodation. The problem with both those arguments is that since that time Congress has by statute approved the accomodation offered in the present case.

Next plaintiff contends that the statute only addresses people who are members of groups who have historically objected to supporting labor unions, such as the Seventh Day Adventists. He points to the broad definition of " 'Religious' nature of a practice or belief" in the EEOC guidelines, 29 C.F.R. 1605.1 (1985), and contends that he falls in that definition, and as a result gets the benefit of the EEOC guideline which allows donation to any charity.

The argument is novel. Stern seeks to take advantage of the government's understandable hesitancy to define what exactly constitutes a "religion." In the controlling statute, Congress chose to give long-established faiths special treatment. The EEOC approach reflects a broader definition.

■ Stern hopes to stay outside the congressional definition as a means to avoid the solution Congress has chosen for this problem. Plaintiff argues that because he is not a member of a recognized group with long-standing convictions, he should be given more alternatives. There is absolutely no reason to believe that Stern is entitled to any more accomodation than those people who are members of the groups defined above. Nor has Stern made any attack on the statute itself.

■ Finally, Stern attacks the means by which the addendum was adopted and claims that since it was not in effect when he objected to joining the union on religious grounds, that it cannot apply to him. There is no question but that the addendum was directed specifically at the situation Stern presented. Stern, however, was not dismissed until after it was adopted and he has presented the court with no convincing reason why the union could not enact a provision that Congress had approved. His tardy attack relating to the union's duty of fair representation is similarily without merit.

The court therefore finds that the defendants are entitled to summary judgment as a matter of law because even if plaintiff was discharged because of his religious convictions against union membership, the defendants offered him a reasonable accomodation which he refused to take. The court's resolution of the Federal question also controls the pending state law claims.

IT IS THEREFORE ORDERED that the defendants' motions for summary judgment are granted.