**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 751, Plaintiff,**

v.

**The BOEING COMPANY, et al., Defendants.**

**No. C86–139R.**

United States District Court, W.D. Washington, Seattle Division.

Nov. 3, 1986.

**1070**

1. A union security clause does not infringe upon the free exercise of religion. *Yott v. North American Rockwell Corp.*, 501 F.2d 398, 403–404 (9th Cir.1974). Consequently, any claim of exemption from the dictates of a union security clause based upon religious beliefs must have a statutory basis.

Hugh Hafer, Cheryl French, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiff.

Jay Cutting, Douglas Bain, Corporate Labor Counsel, The Boeing Co., Seattle, Wash., for defendants.

Steven T. McFarland, Chi-Dooh Li, Michael E. Ritchie, Ellis & Li, Seattle, Wash., for defendant Nichols.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on opposing motions for summary judgment brought by plaintiff International Association of Machinists and Aerospace Workers, District Lodge 751 ("the union"), defendant Boeing Company ("Boeing"), and defendant Thomasine Nichols ("Nichols"). The parties agree that there are no material facts in dispute. Having reviewed the memoranda and affidavits submitted, and being fully advised, the court finds and rules as follows:

## I.  FACTUAL BACKGROUND

■ Defendant Nichols refused on purportedly religious grounds to join or financially support the union.[1] The union brought this suit to compel Boeing to fire Nichols and thereby enforce the union security clause of the collective bargaining agreement.

■ Boeing refused to fire Nichols, asserting that Nichols is exempt from the union security clause under the religious accommodation provision of Title VII of the Civil Rights Act of 1964 ("Title VII").[2]

2. Section 703(a)(1) of Title VII makes it an unlawful employment practice to discriminate against any individual because of such person's religion. 42 U.S.C. § 2000e–2(a)(1). Section 701(j) of the Act, added by Congress in a 1972 amendment, defined religion as including all aspects of religious observance and practice,

This provision has the usual effect of exempting people with religious objections from having to join a union or pay union dues. *Tooley v. Martin-Marietta Corp.,* 648 F.2d 1239, 1242–44 (9th Cir.1981).

The union moves for summary judgment on the grounds (1) that the religious accommodation provision of Title VII is superseded by the similar exemption provided in Section 19 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 169; and (2) that the religious accommodation provision of Title VII, as applied to union security clauses, violates the Establishment Clause of the First Amendment to the United States Constitution.[3]

## II. DOES SECTION 19 OF THE NLRA LIMIT THE SCOPE OF THE RELIGIOUS ACCOMMODATION PROVISION OF TITLE VII?

■ Section 19 of the NLRA provides that members of a bona fide religion, body or sect which has historically held conscientious objections to joining labor unions are not required to join or financially support a union. 29 U.S.C. § 169. Nichols does not argue that she belongs to such a sect, and bases her claim entirely on Title VII, which does not make membership in a religious organization a prerequisite for exemption.

The union contends, however, that the membership requirement of Section 19 is included by implication in Title VII. The question before this court is whether passage of the more restrictive NLRA provision is evidence of Congress' intent to similarly restrict the meaning of Title VII.

The legislative history of Section 19 establishes that Congress intended that section to "reconcile" the NLRA with the reasonable accommodation provision of Title VII. *United States Code Congressional and Administrative News,* 96th Congress,

Second Session, 1980, pp. 7158, 7159. Congress, in passing Section 19, did no more than place its stamp of approval upon a substituted charitable payment as a reasonable accommodation to an employee's religious beliefs. *See Tooley,* 648 F.2d at 1242. There is no evidence that Congress was aware of the difference in coverage between the two "virtually identical" provisions, *id.,* nor that the difference was intended to limit the plain meaning of the Title VII provision.

Title VII and the NLRA create independent and separately enforceable rights for employees. *Alexander v. Gardner-Denver,* 415 U.S. 36, 47–48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974). It is Congress' prerogative to establish in the NLRA context a remedy more limited, and perhaps more easily administered, than that provided by the federal courts. In the absence of evidence to the contrary, this court must conclude that Congress in adopting Section 19 of the NLRA did not *sub silencio* limit the scope of the reasonable accommodations provision of Title VII.

## III. IS THE RELIGIOUS ACCOMMODATION PROVISION OF TITLE VII CONSTITUTIONAL?

■ The Supreme Court applies a three-part test to determine whether a statute is consistent with the strictures of the Establishment Clause. To pass constitutional muster a statute (1) must have a secular legislative purpose; (2) must not, as its principal or primary effect, advance or inhibit religion; and (3) must not foster an excessive government entanglement with religion. *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 2489–90, 86 L.Ed.2d 29 (1985) (quoting *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)).

*unless* an employer demonstrates that he is unable to reasonably accommodate an employee's religious beliefs without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j).

**3.** Boeing also initially asserted that Nichols was exempt from joining or supporting the union

pursuant to Section 19 of the NLRA. In response, the union contends that Section 19 is unconstitutional. Boeing and Nichols now concede, however, that Section 19 does not cover Nichols' particular situation. Therefore, this court does not need to reach the merits of the union's constitutional attack on Section 19.

*Tooley v. Martin-Marietta*, 648 F.2d 1239, 1242 (9th Cir.1981), upheld the constitutionality of the religious accommodation provision of Title VII as applied in exempting Seventh-Day Adventists from union obligations. The union contends, however, that *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), undermines the precedential value of *Tooley*. This court must therefore determine the constitutionality of the religious accommodation provision in light of *Thornton*, and in light of claimed differences between *Tooley* and the present situation.

### A. Secular Purpose

In *Tooley*, the Ninth Circuit concluded that the religious accommodation provision aided the clearly secular purpose of securing equal economic opportunity to members of minority religions. 648 F.2d at 1245. The union does not claim that this conclusion was in any way undermined by *Thornton*. The law is clear, therefore, that the religious accommodation provision' meets the constitutional requirement of having a legitimate secular purpose.

### B. Primary Effect

*Tooley* held that the religious accommodation provision did not have the primary effect of advancing plaintiffs' religion. The court stated:

> The substituted charity accommodation allows the plaintiffs to work without violating their religious beliefs, at a cost equivalent to that paid by their co-workers without similar beliefs. It neither increases nor decreases the advantages of membership in the Seventh-Day Adventist faith in a manner so substantial and direct that it "advances" or "inhibits" the plaintiffs' religion.

648 F.2d at 1246.

*Thornton* struck down a Connecticut statute which prohibited an employer from

discharging an employee for refusing to work on the employee's Sabbath. The statute provided Sabbath observers "an absolute and unqualified right not to work on whatever day they designate as their Sabbath." 105 S.Ct. at 2917. The law contained no exceptions for situations where it would cause an employer substantial economic burdens or impose significant burdens on other employees. This "unyielding weighting in favor of Sabbath observers" went beyond having an incidental or remote effect of advancing religion, and instead had a primary effect that impermissibly advanced a particular religious practice. *Id.* at 2918.

*Thornton* dealt with a statute which might have imposed significant ·burdens upon the employer and fellow employees of a religious employee. The court gave as examples of situations in which significant burdens would be imposed (1) a Friday Sabbath observer employed in an occupation with a Monday through Friday schedule, such as a schoolteacher; (2) a high percentage of an employer's workforce asserting rights to the same Sabbath; and (3) fellow employees with greater seniority forced to work weekends. *Id.* at 2918, 2918 n. 9.

Under the religious accommodation provision of Title VII, however, the religious views of an anti-union employee need not be accommodated if the union or employer can establish "undue hardship." *Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397, 400 (9th Cir.1978).[4] In addition, allowing a religious objector to make substitute charitable payments gives religious employees no financial or lifestyle advantages over non-religious employees.

Because of these significant differences in the statutes involved, *Thornton* does not undermine *Tooley's* conclusion that granting an exemption to religious employees is a reasonable accommodation which does

---

4. For example, a union could establish undue hardship if a widespread refusal to pay union

dues occurred. *Burns v. Southern Pacific*

not significantly advance or inhibit any religion.[5]

### C. Excessive Government Entanglement

*Tooley* held that implementation of the substituted charity accommodation required only a minimal amount of supervision and administrative cost, and that it therefore did not impermissibly entangle the government in religion. 648 F.2d at 1246. "Once the sincerity of a religious objector's belief is established, the only administrative burden involves the employee and the union agreeing on a mutually acceptable charity." *Id.*

The union challenges Nichols' characterization of her views as "religious," and argues that they are actually secular in nature. The union argues that an investigation into the *nature,* as opposed to the *sincerity,* of Nichols' beliefs would impermissibly entangle the government in religion.

The union has presented no evidence to support its argument that an inquiry into whether Nichols' beliefs are truly religious in nature would cause more entanglement than an inquiry into the sincerity of those beliefs. In both cases it would be entirely appropriate, indeed necessary, for a court to look behind the veil of asserted religious doctrine to see if the claimant acts in a manner inconsistent with the claimed belief or is fraudulently concealing secular motivations. *Philbrook v. Ansonia Board of Education,* 757 F.2d 476, 481 (2d Cir.1985). This court is therefore bound to follow *Tooley's* determination that the need to verify the basis of a request for exemption does not create excessive government entanglement in religion.

### IV. CONCLUSION

Defendant Nichols had the right, under the religious accommodation provision of Title VII, to make a substituted charitable payment in lieu of joining or financially supporting the union. Plaintiff's motion for summary judgment is therefore DENIED. Because there are no material facts in dispute, defendants' motions for summary judgment are GRANTED.[6]

The court does not find that plaintiff's pleadings were frivolous or legally unreasonable. Defendant Nichol's motion for

---

*Transportation Co.,* 589 F.2d 403, 407 (9th Cir. 1978).

**5.** This court takes note of the fact that the Third Circuit recently upheld the constitutionality of the religious accommodation provision against a similar argument based upon *Thornton,* Protos v. Volkswagen of America, Inc., 797 F.2d 129 (1986) (August 5, 1986, BNA Daily Labor Report). The court stated:

Unlike the Connecticut statute, Title VII does not require absolute deference to the religious practices of the employee, allows for consideration of the hardship to other employees and to the company, and permits an evaluation of whether the employer has attempted to accommodate the employee.... Any effect the statute has of advancing religion, therefore, would appear to be incidental to its primary effect of promoting freedom of conscience and prohibiting discrimination in the workplace.

Page D–4.

The court also notes Justice O'Connor's concurrence in *Thornton,* joined in by Justice Marshall. Justice O'Connor stated that, since Title VII calls for reasonable, not absolute, accommo-

dations, and protects all religious beliefs, not only the Sabbath observance, the constitutionality of the religious accommodation provision of Title VII is not called into doubt by the majority opinion in *Thornton.* 105 S.Ct. at 2919.

**6.** The Union did not raise its claim that Nichols' objections are not "religious" in its response to defendants' motions for summary judgment. The religious nature of Nichols' objections is therefore not a material fact in dispute, and does not prevent summary judgment from being granted to defendants.

Furthermore, the record clearly shows that Nichols' objections were based upon her own personal understanding of the Bible. (*See, e.g.,* deposition of Nichols, at 13, 18, 26–27). This is clearly a "religious" basis for her beliefs. To defeat a motion for summary judgment, the evidence offered in opposition to the motion must be sufficient to require a finder of fact to resolve the parties' differing versions at trial. *British Airways Board v. Boeing Company,* 585 F.2d 946, 952 (9th Cir.1978). The union has not presented any evidence which could lead a finder of fact to reject this conclusion.

sanctions under Fed.R.Civ.P. 11 is therefore DENIED.

IT IS SO ORDERED.