John de J. Pemberton, Jr., Jonathan T. Peck, Marian Halley, E.E.O.C., San Francisco Dist. Office, San Francisco, Cal., for plaintiff.

Tom Dalzell, Ann Miley, Richard H. Harding, Littler, Mendelson, Fastiff & Tichy, Walnut Creek, Cal., for defendants.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DAVEY TREE SURGERY COMPANY and Local 1245, International Brotherhood of Electrical Workers, Defendants.**

**No. C–86–5803 MHP.**

United States District Court, N.D California.

April 16, 1987.

MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff Equal Employment Opportunity Commission ("EEOC") brought this action on behalf of Ron Davidson against Davey Tree Surgery Company ("Davey") and Local 1245, International Brotherhood of Electrical Workers ("Union"). In defendant Union's motion for summary judgment and plaintiff's motion for partial summary judgment, the parties address the question whether section 19 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 169 (1980), limits the scope of section 701(j) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j). The parties also debate the constitutionality of section 19. Because the court finds that section 19 and section 701(j) provide separate and independent bases for relief, the constitutional question is not reached. Plaintiff's motion for partial summary judgment is granted and defendant's motion for summary judgment is denied.

## FACTUAL BACKGROUND

From August 1980 to August 1984 Ron Davidson was a member of the Seventh–Day Adventist Church, which has religious objections to its members joining unions. Mr. Davidson withdrew from the church, allegedly because his understanding of church doctrine led him to believe that he was unworthy of membership. However, he apparently continued to attend the church every week, studied with a pastor of the church, and continued to adhere to the tenets of the church.

Mr. Davidson was employed by Davey from late June 1984 to January 18, 1985, and was a permanent employee from September 17, 1984 until his termination. Upon becoming a permanent employee, Mr. Davidson became subject to the collective bargaining agreement between Davey and the Union, which required that employees join the Union within thirty days of hire. Mr. Davidson refused, on religious grounds, to join the Union, and offered instead to donate to charity an amount equivalent to his union dues. Because he was not a member of an organized religion as required by section 19 of the NLRA, the Union would not accept this arrangement and requested that Davey terminate Mr. Davidson. He was terminated on January 18, 1985. The EEOC filed this action on October 8, 1986.

## LEGAL BACKGROUND

Under the NLRA, employers and unions may enter into agreements by which employees are required to maintain union membership. These "union shop" agreements help to eliminate "free-riders," defined by one court as "those who enjoy the benefits of the union's negotiating efforts without assuming a corresponding portion of the union's financial burden." *Buckley v. American Fed'n of Television and Radio Artists,* 496 F.2d 305, 311 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974). Without such agreements, "free-riders" might "seriously undermine the union's ability to perform its bargaining function." *Id.*

In 1972, Congress amended Title VII of the Civil Rights Act of 1964. Section 701(j) of the Act now defines religion to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j) (1982). Section 701(j) has been held to apply to unions as well as employers. *Yott v. North Am. Rockwell Corp.,* 602 F.2d 904, 909 (9th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980). In conjunction with 42 U.S.C. § 2000e–2(c), therefore, it imposes a duty on unions to accommodate persons with religious objections to union membership. *Tooley v. Martin–Marietta Corp.,* 648 F.2d 1239, 1242–43 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). This duty has been found to be satisfied by allowing the employee to donate an amount "equal to union dues to a mutually acceptable charity." *Id.* at 1241.

In 1980, Congress amended section 19 of the NLRA to exempt from union shop agreements any "member of and adhere[nt] to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations." 29 U.S.C. § 169 (1982). Instead, such employees "may be required in a contract between such employees' employer and a labor organization ... to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund." *Id.* Before the 1980 amendment, the exemption had applied only to health-care employees. The 1980 amendment expanded the exemption to cover all employees.

## DISCUSSION

Defendant Union argues that it was justified in seeking the termination of Mr. Davidson because section 19 of the NLRA has superseded the protection of Title VII in situations covered by section 19. If it has, then only members of "bona fide" religions are exempt from union shop requirements, and Mr. Davidson is not eligi-

ble. Case law and the legislative history of the 1980 amendment to section 19, however, indicate that Title VII has not been superseded.

## I. Case Law

The first case to comment on the 1980 amendment of section 19 was *Tooley*, 648 F.2d at 1239. The Ninth Circuit held that substituting a charitable donation for union dues was a "reasonable accommodation" under Title VII. In support of its holding, the court cited the legislative history of the 1980 amendment to the NLRA, which "recognizes that the substituted charity accommodation effects a reasonable reconciliation between section 8(a)(3) of the NLRA and Title VII, and otherwise constitutes a reasonable accommodation under section 701(j)." *Id.* at 1242 (footnote omitted). The court thus did not view section 19 as superseding Title VII, but rather as confirming that section 8(a)(3) of the NLRA (which allows union shop agreements) is subject to the requirements of Title VII and that the substituted charity accommodation is a reasonable reconciliation of the two statutes.

Two recent district court decisions have dealt more directly with the conflict between section 19 of the NLRA and section 701(j) of Title VII. In *Stern v. Teamsters "General" Local Union No. 200*, 626 F.Supp. 1043 (E.D.Wis.1986), the court was confronted with an employee who was not a member of an established religion, but whose religious beliefs precluded his joining the union. The employee offered to make a donation to a religious broadcaster, but, because section 19 provides only for donations to nonreligious charities, the union was not satisfied with this arrangement. The employee argued that he was not covered by section 19 because he was not a member of an organized religion. Therefore, he was not restricted to nonreligious charities. The court rejected the employee's argument, pointing out that "[t]here is absolutely no reason to believe that Stern is entitled to any more accommodation than those people who are members" of established religions. *Id.* at 1047.

Although the *Stern* court referred to section 19 as "the controlling statute" and "the solution Congress has chosen," *id.*, a closer examination reveals that the court viewed section 19 as controlling the method of accommodation, not the decision *whether* to accommodate a particular employee's religion. The court granted summary judgment to the union not because section 19 superseded section 701(j) so that Stern had no right to a reasonable accommodation, but because "the defendants offered him a reasonable accommodation which he refused to take." *Id.* Implicit in the court's discussion is the view that section 19 does not supersede Title VII, but merely defines a reasonable accommodation in certain circumstances. The *Stern* holding, then, is that because the substituted charity accommodation is reasonable for members of organized religions, it is reasonable for individuals as well.

In *Machinists v. Boeing Co.*, 662 F.Supp. 1069 (W.D.Wash.1986), the court confronted the exact issue facing this court. The union had moved for summary judgment on the grounds "that the religious accommodation provision of Title VII is superceded by the similar exemption provided in Section 19." *Id.* at 1071. It is instructive to quote the court's reasoning in full:

> The legislative history of Section 19 establishes that Congress intended that section to "reconcile" the NLRA with the reasonable accommodation provision of Title VII.... Congress, in passing Section 19, did no more than place its stamp of approval upon a substituted charitable payment as a reasonable accommodation to an employee's religious beliefs.... There is no evidence that Congress was aware of the difference in coverage between the two "virtually identical" provisions, ... nor that the difference was intended to limit the plain meaning of the Title VII provision.
>
> Title VII and the NLRA create independent and separately enforceable rights for employees.... It is Congress' prerogative to establish in the NLRA context a remedy more limited, and perhaps more easily administered, than that provided by the federal courts. In the

absence of evidence to the contrary, this court must conclude that Congress in adopting Section 19 of the NLRA did not *sub silencio* limit the scope of the reasonable accommodations provision of Title VII.

(citations omitted) *Id.* at 1071.

## II. *Legislative History*

The Union argues that the *Boeing* holding should be disregarded because it relied on the House Report on the 1980 amendment without citing any of the House Debate. In particular, defendant points to the remarks of Rep. Eckhardt: "[The amendment] attempts to greatly restrict the broad, nontraditional definition of religion already recognized by the courts.... New religions, which could not 'historically' hold such objections, are apparently left out as are loosely organized sects and even a profound belief by a single person." 126 Cong.Rec. 2585 (1980). The defendant sees this as evidence that Congress was aware of the difference in coverage between section 19 and section 701(j) and, presumably, intended to limit the exemption to those covered by section 19. As was recently pointed out by Justice Powell, however, this kind of reasoning is unpersuasive:

> In the legislative history of every statute, one may find critics of the bill who predict dire consequences in the event of its enactment. A court need not infer from such statements by opponents that Congress *intended* those consequences to occur, particularly where, as here, there is compelling evidence to the contrary.

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (Powell, J., dissenting) (emphasis in original).

The evidence to the contrary is, in this case, found throughout the legislative history. The House Report says that "the bill reflects the legislative determination that the alternative to the payment of union dues provided in the bill 'reasonably accommodate(s) * * * an employee * * * religious observance or practice without undue hardship'." H.R.Rep. No. 496, 96th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1980 pp. 7158, 7159 [hereinafter House Report] (quoting Title VII, § 701(j), 4[2] U.S.C. § 2000e(j)). If section 19 were meant to supersede section 701(j), there would be no reason to describe the amendment in terms of section 701(j). Instead, as cosponsor Rep. Clausen pointed out in the House Debate, "the purpose of this bill is to resolve any conflict and to *express congressional intent as to the reasonableness of a charity substitution accommodation* which all of the Federal courts of appeals ruling on the issue have found to be an accommodation acceptable under title VII." 126 Cong.Rec. 2582 (1980) (emphasis added).

In Supplemental Views appended to the House Report, it is stated that the "bill accepts the principle of religious liberty as guaranteed by our Constitution, and implemented by the Equal Employment Opportunity Act, and *it is clear that the bill prefers that principle over any conflict with it raised by our national labor policy.*" House Report at 7161 (emphasis added).

This sentiment is echoed on every page of the House Debate on the amendment. To cite just two of many examples, Rep. Brown viewed the amendment as "stand[ing] in recognition of one of the most fundamental rights under our Constitution, the right of religious freedom," 126 Cong.Rec. 2585 (1980), and Rep. Erlenborn said the amendment concerned "a principle that is central to our constitutional system, our principles under title VII of the Civil Rights Act and our religious traditions." *Id.* at 2583. Indeed, the purpose of the amendment, according to cosponsor Rep. Clausen, "is to protect those who have religious objections to belonging to or financially supporting a labor organization.... [It] has been called the 'conscience clause' and the 'religious freedom amendment.'" *Id.* at 2581.

It is inconceivable that Congress would, in an amendment intended to increase religious freedom, act to foreclose individuals from protecting that freedom under Title VII. The only conclusion to be drawn from the legislative history is that Congress was, as it stated, attempting to reconcile

1264

the NLRA with Title VII, not to supersede Title VII. Individuals who are not members of organized religions but otherwise meet the requirements of section 19 are thus free to take advantage of the rights afforded them under Title VII.

CONCLUSION

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment based on religion. The act has been construed to allow exemptions from union shop agreements for those who have religious objections to union membership. Instead, the donation to charity of an amount equivalent to union dues has been allowed. The amendment in 1980 of section 19 of the NLRA codified this accommodation in order to give it the congressional stamp of approval and to cut the cost of litigating such controversies. *See* 126 Cong.Rec. 2581 (1980) (remarks of Rep. Clausen). There is no indication that Congress intended section 19 to supersede the protections of Title VII. Thus, Mr. Davidson's non-membership in the Seventh–Day Adventist Church in no way deprives him of the right to take advantage of the substituted charity accommodation under Title VII. IT IS THEREFORE ORDERED THAT plaintiff's motion for partial summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.