30 F.Supp.2d 217 (1998)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
UNION INDEPENDIENTE DE LA AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO (UIA) et al., Defendants.
No. 96-2650 (PG).
United States District Court, D. Puerto Rico.
December 17, 1998.
*218 *219 Ann Thacher-Anderson, EEOC New York District Office, New York, NY, for Plaintiff.
Angel Tapia-Flores, San Juan, PR, Pablo Landrau Pirazzi, Hato Rey, PR, for Defendant.

OPINION & ORDER
PEREZ-GIMENEZ, District Judge.
Pending before this Court are plaintiff's motion for partial summary judgment, defendants' opposition to said motion and/or cross-motion for summary judgment, plaintiff's reply to defendants' cross-motion for summary judgment, and defendants' reply to plaintiffs' reply.

I. The Facts
David Cruz Carrillo (hereinafter referred to as "Cruz"), a Seventh Day Adventist, was hired by the "Autoridad de Acueductos y Alcantarillados" of the Commonwealth of Puerto Rico (hereinafter referred to as "AAA") as a temporary employee in 1986. Cruz believes that the doctrine of the Seventh Day Adventist Church prohibits him from joining a labor union and that he must abide by that doctrine. When he applied for employment with AAA, he never mentioned nor his personnel record reflected his affiliation to a church that abides him to a specific religious doctrine forbidding him to become a member of a labor organization. However, his application for employment at AAA shows that Cruz attended Seventh Day Adventist schools and graduated from a Seventh Day Adventist college.
The "Union Independiente de la Autoridad de Acueductos y Alcantarillados" (hereinafter referred to as "UIA") is a labor organization created in accordance with the Labor Relations Act of Puerto Rico. 29 L.P.R.A. §§ 60 et seq. It represents government employees not covered by the National Labor Relations Act. 29 U.S.C. §§ 151 et seq. UIA represents several types or categories of employees, including operations and maintenance workers of AAA. AAA had, and still has, a Collective Bargaining Agreement (hereinafter referred to as "CBA") with codefendant UIA. The CBA in force between the employer and UIA contains a "union shop" clause and therefore, all employees of the appropriate unit must belong to the labor organization.
On December 5, 1988, Cruz became a permanent employee of AAA. As part of the labor contract executed, AAA delivered to him the written conditions under which he would be employed. As a required working condition he was informed of his obligation to join the UIA and pay union dues. UIA required him to become one of its members, as described by the "union shop clause" of the CBA in force, but Cruz refused to do so explaining that his religious beliefs forbid him to join the constituency of the UIA.
In addition to the requirement that all AAA employees be members of UIA, Cruz objected to Saturday union meetings, public union manifestations or strikes, wording of the union's loyalty oath, and payment of union dues. Through correspondence, meetings, and administrative procedures, UIA expressed its willingness to exempt Cruz from Saturday meetings and public strikes or picketing, to paraphrase its loyalty oath to an *220 affirmation, and to transfer his dues to a nonprofit organization, retaining only the share used to pay his fringe benefits. However, UIA has steadfastly maintained its position that Cruz must be a member of the union.
On March 27, 1991, the Board of Directors of the UIA commenced disciplinary proceedings against Cruz at the regional level, before a committee of three members of the Humacao Chapter of UIA, for his refusal to join the union. As a result of said proceedings, the UIA issued a resolution requesting the Union Central Committee to ask for Cruz's suspension from employment. Cruz appealed said resolution to the UIA's Executive Central Committee which after a meeting held on April 22, 1992, resolved to apply disciplinary measures against him. Throughout the course of these proceedings Cruz was declared a person "non grata" to the UIA.
On July 1992, Cruz filed a grievance with the Grievance Committee of the AAA to protest decisions of UIA requiring him to join the union in order to keep his job. Since Cruz refused to join the union, the decision on his grievance went against him. On October 11, 1993, AAA discharged Cruz for his refusal to join UIA. Two weeks later, on October 25, 1993, plaintiff filed a complaint under Title VII, before FEPA and the EEOC alleging discrimination in his employment for his religious beliefs.

II. Analysis & Discussion

(A) Title VII Requires Employers to Find Reasonable Accommodations for their Employees' Religious Beliefs If It Does Not Cause Undue Hardship
Title VII forbids labor organizations "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his ... religion ...." 42 U.S.C. § 2000e-2(c)(1). Under Section 2000e(j) of Title VII (hereinafter referred to as "subsection (j)"), added in 1972, Riley v. Bendix Corp., 464 F.2d 1113, 1116 (5th Cir. 1972), the term "religion" includes: "all aspects of religious observance and practice, as well as belief." An employer bears the responsibility of affording reasonable accommodation to an employee's religious observance, practice or belief, unless the employer demonstrates that such accommodation would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "Reasonable accommodation," however, is not a license for an employee to demand any sort of onerous relief, since an accommodation that requires the employer to bear more than a "de minimis" cost constitutes undue hardship. TWA v. Hardison, 432 U.S. 63, 84, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).
EEOC regulations impose a duty of reasonable accommodation not only upon employers, but upon unions as well:
Some collective bargaining agreements include a provision that each employee must join the labor organization or pay the labor organization a sum equivalent to dues. When an employee's religious practices [d]o not permit compliance with such a provision, the labor organization should accommodate the employee by not requiring the employee to join the organization and by permitting him or her to donate a sum equivalent to dues to a charitable organization.
29 C.F.R. § 1605.2(b)(2). The courts have interpreted subsection (j) along the same lines, refusing to relieve unions from the reasonable accommodation requirement. See generally Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 487 (2nd Cir.1985), aff'd on other grounds, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); EEOC v. University of Detroit, 904 F.2d 331 (6th Cir.1990); Tooley v. Martin-Marietta Corp., 648 F.2d 1239 (9th Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (upholding protest by Seventh Day Adventist against compelled union membership); EEOC v. AFSCME, 937 F.Supp. 166 (N.D.N.Y.1996); EEOC v. Davey Tree Surgery Co., 671 F.Supp. 1260 (N.D.Cal. 1987).
Section 2000e-2(c)(1) and subsection (j) have established a three-pronged test to determine whether a prima facie case of religious discrimination has been fulfilled: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure *221 to comply with the conflicting employment requirement." Turpen v. Missouri-Kansas-Texas R.R. Co., 736 F.2d 1022, 1026 (5th Cir.1984). See also Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2nd Cir.1985), aff'd on other grounds, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); Cooper v. Oak Rubber Co., 15 F.3d 1375, 1378 (6th Cir.1994) (sustaining complaint by Seventh Day Adventist concerning work schedule, but affirming finding of undue hardship); Anderson v. General Dynamics Convair Etc., 589 F.2d 397, 401 (9th Cir.1978) (sustaining complaint of Seventh Day Adventist against imposition of agency shop fee).
All of the elements necessary to establish a prima facie case of discrimination based on religion have been demonstrated by the undisputed facts of the case at bar. The sincerity of Mr. Cruz's belief in the Seventh Day Adventist Church and its doctrine forbidding union membership cannot be doubted. (Cruz Dep. at 28, lines 11-14, and at 66, lines 4-25). When UIA insisted that Cruz had to join the union, he explained that his refusal to join was based on the religious doctrine of the Seventh Day Adventist Church of which he was and is a member. UIA communicated this information to AAA, (Vega Dep. 17-19), which then fired Cruz because of his refusal to join.
During his deposition, attorneys for UIA and AAA challenged the sincerity of Cruz's religious beliefs in various ways: Cruz admitted in his deposition that his application for employment at AAA is not accurate when it states that he speaks and writes the English language. As a matter of fact, his deposition had to be taken in Spanish. Also, and contrary to his religious creed, he admitted that he obtained a divorce decree against his wife, in spite of the fact that in his religious denomination divorces are forbidden except in cases of adultery. Cruz also admitted that, again contrary to his religious belief, he executed before a Notary Public the oath administered to all public employees. Finally, defendants' attorneys suggest that plaintiff's religious beliefs are insincere because he had accepted a five-day work-week at AAA in apparent contravention of the Fourth Commandment in the Decalogue requiring six days' labor. (Cruz, Dep.28, 36-37).
Cruz testified that his divorce made him ineligible to serve as a minister of the Seventh Day Adventist Church (Cruz, Dep.65); however, it is clear from the overall record that he remains an adherent. He also testified that when he became employed by AAA, he did not formally swear with hand upraised. (Cruz, Dep. 85, lines 1-2). Furthermore, no evidence was brought forward to show that the Seventh Day Adventist Church requires an adherent employed five days per week to obtain additional employment on the sixth day. Although the misleading assertion in Cruz's application that he knew how to speak and read English when in fact he did not have such knowledge does make this Court to pause, a misstep in an individual's life does not automatically mean that he has rejected his religious creed.
Defendants have also tried to cast doubt on the sincerity of Cruz's beliefs by showing that several Seventh Day Adventists have joined UIA and other unions. The fact that some Seventh Day Adventists, unlike Cruz, have seen fit to join labor organizations does not invalidate Cruz's religious objection to union membership. The courts pay deference to individual variations of belief, observance and practice within a denomination. In Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 715-16, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), exempting from unemployment benefit regulations a Jehovah's Witness who had resigned on religious grounds from a weapons foundry, the Court noted that intrafaith differences are not uncommon among followers of a particular creed. Such differences therefore do not defeat a faith-based claim asserted as a matter of individual conscience.
Case law under Title VII is in accord, upholding the right of Seventh Day Adventists not to join or support unions. McDaniel v. Essex Int'l, Inc., 509 F.Supp. 1055 (W.D.Mich.1981), aff'd, 696 F.2d 34 (6th Cir. 1982); Nottelson v. Smith Steel Workers D.A.L.U. 19806, 643 F.2d 445 (7th Cir.), cert. denied, 454 U.S. 1046, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981); Maine Human Rights Comm'n v. Local 1361, United Paperworkers *222 Int'l Union, 383 A.2d 369 (Maine 1978). Each of these decisions rests not only on the individual's adherence to a particular denomination, but implicitly also on the principle that the free exercise of the individual's religion, as observed and practiced individually, requires protection of the right not to associate with the union. It does not matter that Cruz's convictions as to union membership are not shared universally by other Seventh Day Adventists. The courts look at religious beliefs as held by the individual. EEOC v. AFSCME, 937 F.Supp. 166 (N.D.N.Y.1996) (upholding under subsection (j) donation of agency shop fee to charity as accommodation for Roman Catholic employee opposed to capital punishment); EEOC v. Davey Tree Surgery Co., 671 F.Supp. 1260 (N.D.Cal.1987) (upholding same accommodation for worker no longer affiliated with religious congregation). Accordingly, it is those beliefs, not some sectarian common denominator, which must be afforded reasonable accommodation under subsection (j). Furthermore, the record contains numerous publications by the Seventh Day Adventist Church forbidding union membership. These publications reinforce the sincerity of Cruz's belief and its basis in church doctrine. When UIA insisted he become a union member, Cruz explained his belief to UIA. UIA acknowledged that Cruz had articulated his religious belief. UIA in turn informed AAA (Vega, Dep. at 19 and 23), and expressed the view that Cruz should be suspended until consenting to become a union member. Thereafter, AAA discharged Cruz from employment.

(B) The "Reasonable Accommodation" Requirement Has Not Been Satisfied
Once an employee establishes a prima facie case of religious discrimination in the course of his employment, the burden shifts to the employer (or the union) to produce evidence showing that the employer (or union) cannot reasonably accommodate the employee without incurring undue hardship. Civil Rights Act of 1964, §§ 701(j), 703(a)(1), as amended, 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); Cooper v. Oak Rubber Co., 15 F.3d 1375, 1378 (6th Cir.1994). In the course of its dealings with plaintiff, UIA has allowed Cruz to affirm his loyalty rather than to take an oath, and to not take part in strikes or picketing or attend union meetings on the Sabbath. Yet, UIA has always maintained to this very day the requirement of union membership as non-negotiable. UIA's position has been that Cruz must join the union because other Seventh Day Adventists have joined. (Lugo Dep. 73, 99; Ortiz-Colón Dep. 28, 31). Cruz, however, has never accepted UIA's terms, since according to his beliefs the teachings of the Seventh Adventist Church forbid membership in a labor organization.[1]
UIA's efforts to reach a compromise have fallen well below the standard for reasonable accommodation that EEOC regulations set:
Some collective bargaining agreements include a provision that each employee must join the labor organization or pay the labor organization a sum equivalent to dues. When an employee's religious practices to [sic] not permit compliance with such a provision, the labor organization should accommodate the employee by not requiring the employee to join the organization and by permitting him or her to donate a sum equivalent to dues to a charitable organization. (Emphasis added).
29 C.F.R. § 1605.2(d)(2). Thus, UIA cannot insist that Cruz become a union member.
UIA claims under Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) that because it has made offers to exempt Cruz from participation in strikes and Saturday meetings, it has satisfied subsection (j). Yet, Ansonia does not address the issue of whether a labor organization can discharge an employee who refuses on religious grounds to become a union member. Ansonia stands for the proposition that reasonable accommodation can be something different from the accommodation preferred by the employee. An employer, therefore, is free to reject an accommodation suggested by the employee as long as it *223 makes an alternative offer that actually meets the employee's need for reasonable accommodation of his religious belief and practice. UIA has failed to make this alternative offer and continues to fail as long as it maintains its inflexible requirement of union membership.
An employer does not satisfy subsection (j) if it disregards one of the faith-based objections of an employee. In EEOC v. Univ. of Detroit, 904 F.2d 331 (6th Cir.1990), reversing 701 F.Supp. 1326 (E.D.Mich.1988), the court rejected a proposed accommodation which would have limited amounts payable by the employee as agency fees but would have required him, notwithstanding his religious objections, to contribute the amounts so limited to a union which had campaigned to protect women's right of choice respecting abortions. The court stated that the union could not simply reduce its demands, but must accommodate the employee's religious belief against associating with the union in any way. Id. at 334-35. Accordingly, UIA cannot rest on its past concessions, but must address Cruz's religious objection to becoming a union member.

(C) Defendants Have Failed to Demonstrate "Undue Hardship"
Defendants argue that excusing Cruz from membership would lead to disruption. However, UIA has not presented to this Court any evidence that would support a claim of undue hardship. Witnesses spoke of possible adverse consequences, but their testimony included no facts and was only speculative and conclusory. The courts have generally disregarded claims of hardship based on speculation. See Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1243 (9th Cir.1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); Anderson v. General Dynamics Convair Aerospace Div., 589 F.2d 397, 402 (9th Cir.1978), cert. denied, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).
UIA also argues that allowing Cruz to go back to his job at AAA without becoming a union member would conflict with a statute of Puerto Rico and the CBA. Local law authorizes unions to negotiate provisions in a collective bargaining agreement requiring all permanent employees in the bargaining unit to be or become union members. 29 L.P.R.A. § 69(1)(c). However, Section 708 of Title VII, 42 U.S.C. § 2000e-7, preserves state and local laws only to the extent they are in agreement with the provisions of Title VII. U.S. Const. Art. VI cl. 1; 42 U.S.C. § 2000h-4. State and local legislation can provide more protection against discrimination than is found in Title VII, compare General Elec. Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (rejecting claim of sex discrimination by pregnant worker denied fringe benefits) with Brooklyn Union Gas Co. v. New York State Human Rights Appeal Bd., 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976) (upholding orders of state fair employment agencies sustaining comparable complaints), but cannot provide less. If state or local laws indeed provide less protection, they are superseded by Title VII to the extent of conflict with Title VII and thus, cannot serve as basis for a claim of undue hardship.
UIA alleges that reinstatement without the union-membership requirement would make Cruz, in essence, a "free rider." (Ortiz-Colón, Dep.25, 41). In other words, defendants claim that Cruz simply wants to obtain union benefits without paying for them. Allowing Cruz not to become a member, the argument goes, would serve as a bad example to other members who could become demoralized. (Ortiz-Colón, Dep.33, 36, 38, 41). Even though no cost-benefit analysis has been performed and no individual member has been identified who would object if Cruz obtained reinstatement without joining the union, (Ortiz-Colón, Dep.37, 40), UIA insists that said reinstatement would destabilize the UIA medical plan and increase the expense of bargaining. (Lugo, Dep.101-102).
The courts have generally refused to find undue hardship in situations where an employee resists union membership and seeks to donate assessed union dues to charity. E.g., Burns v. Southern Pac. Transp. Co., 589 F.2d 403, 406-407 (9th Cir.1978), EEOC v. AFSCME, 937 F.Supp. 166 (N.D.N.Y.1996) (citation omitted). Undue hardship is demonstrated, however, by showing widespread opposition to free riders or widespread refusal *224 to pay union dues. International Ass'n. of Machinists v. Boeing Co., 833 F.2d 165, 168 (9th Cir.1987). Defendants have proven neither. Defendants' allegation that exempting Cruz from membership would lead to antagonism among UIA's members and would create problems for its benefit plans is speculation unsupported by any evidence brought forward by UIA. On the contrary, six employees of AAA protested to management when Cruz was fired.
It also seems unlikely that other employees will leave UIA because of Cruz's reinstatement. According to AAA and UIA, no other employee of AAA has objected on religious grounds to joining UIA; thus, the present controversy is an isolated situation rather than a trend-setting pattern. (Lugo, Dep. 19-20; Ortiz-Colón, Dep. 35; Vega, Dep. 31-32). Furthermore, Cruz has offered to pay the equivalent of the union dues as long as they are donated to charity. Therefore, neither undue hardship nor widespread opposition to alleged free riding have been proven.

(D) Subsection (j) is Constitutionally Valid
Although the First Circuit has never ruled explicitly on the issue of whether subsection (j) of Title VII is constitutional, five circuit courts of appeals have upheld said subsection's constitutionality. See Protos v. Volkswagen of America, Inc., 797 F.2d 129, 136-137 (3rd Cir.), cert. denied, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); EEOC v. Ithaca Indus., Inc., 849 F.2d 116, 119 (4th Cir.) (en banc), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988) (union-prompted discharge of Seventh Day Adventist for refusal to join or pay dues); Nottelson v. Smith Steel Workers, 643 F.2d 445, 453-455 (7th Cir.), cert. denied, 454 U.S. 1046, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981); Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1244-1246 (9th Cir.), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (attempt by union to discharge Seventh Day Adventists for refusal to join or pay dues); Anderson v. General Dynamics Convair Aerospace Div., 648 F.2d 1247 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982) (union-prompted discharge of Seventh Day Adventist for refusal to join). Today we join the view espoused by the decisions mentioned above.
UIA attacks the constitutionality of subsection (j) by analogizing it to the state statute struck down in Estate of Thornton v. Caldor, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), aff'g 191 Conn. 336, 464 A.2d 785 (1983). The statute of Caldor, however, is distinguishable from subsection (j) for Establishment Clause purposes. In Caldor, the Court declared unconstitutional a state statute prohibiting dismissal from employment for refusal to work on the Sabbath. The concurring opinion of Justices O'Connor and Marshall distinguished between the Connecticut statute and subsection (j): "Since Title VII calls for reasonable rather than absolute accommodation and extends that requirement to all religious beliefs and practices rather than protecting only the Sabbath observance, I believe an objective observer would perceive it as an anti-discrimination law rather than an endorsement of religion or a particular religious practice." Id. at 712, 105 S.Ct. 2914. Said opinion also explained that Title VII has "the valid secular purpose of assuring employment opportunity to all groups in our pluralistic society." 472 U.S. at 711-712, 105 S.Ct. 2914.

(E) The Union Security Clause Must Yield to Title VII and Subsection (j)
Under the Supremacy Clause, U.S. Const. Art. VI cl. 2, and the supersedure clauses in the Civil Rights Act of 1964, 42 U.S.C. § 2000h-4 and in Title VII itself, 42 U.S.C. § 2000e-7, subsection (j) prevails over the union security clause in UIA's collective bargaining agreement with AAA. Linscott v. Millers Falls Co., 440 F.2d 14 (1st Cir.), cert. denied, 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971), and Railway Emp. Dept. v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), which seem to authorize pursuant to a union security clause the discharge of an employee who refuses to become a member of the union, are inapplicable to and distinguishable from the present case.
Linscott was decided before amendment of Title VII in 1972 to incorporate subsection (j). Linscott, therefore, does not apply to this case, which is based upon subsection (j). *225 Moreover, unlike the union security clause in Linscott, UIA's union security clause is not protected by the NLRA, because AAA is an agency of the government of Puerto Rico. 29 U.S.C. § 152(2). Congress has not extended its interest in labor peace to the relationship between AAA, UIA and Cruz. Subsection (j) represents the only Congressional expression of governmental interest in that relationship.
For similar reasons, Hanson also does not support UIA's contentions. Hanson, which also antedates subsection (j), dealt with a union security clause authorized by the Railway Labor Act. The Supreme Court upheld the clause against challenges based on the First and Fifth Amendments, but declared that the statutory provision governing the collective bargaining agreement constituted a sufficient governmental action to require consideration of the constitutional issues. The court left open the possibility that a membership or dues requirement might, in some circumstances, be imposed unconstitutionally, but found no such problem on the record.
Hanson does not address the situation here, where a union security clause not authorized or protected by Congress intersects with a federal statute requiring reasonable accommodation of a worker's religious belief. Hanson simply leaves open the question of whether a worker can be discharged from employment because he refuses to become a union member. Post-Hanson developments have now given that question a negative answer, both apart from subsection (j), Conley v. Massachusetts Bay Transp. Auth., 405 Mass. 168, 539 N.E.2d 1024 (1989); Vic Koenig Chevrolet, Inc. v. N.L.R.B., 126 F.3d 947 (7th Cir.1997), and thereunder. Tooley v. Martin-Marietta Corp., 648 F.2d 1239 (9th Cir.1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); Anderson v. General Dynamics Convair Aerospace Division, 648 F.2d 1247 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).[2]

(F) Plaintiff Has Exhausted All the Available Administrative Remedies
UIA argues that plaintiff failed to exhaust all the administrative remedies available in the CBA because he did not seek to be reinstated at the end of his suspension from employment. This argument lacks merit. Plaintiff has pursued his claim through all the administrative procedures available to him. Furthermore, UIA has always conditioned employment and thus, Cruz's reinstatement, on his willingness to belong the labor union at AAA. In other words, Cruz was free to seek reinstatement only if he was willing to join UIA. Cruz, however, has clearly stated that said condition is unacceptable due to the doctrine of the religion to which he subscribes.

III. Conclusion
Freedom to exercise one's religion lies at the core of our nation's fundamental rights. See United States v. Ballard, 322 U.S. 78, 87, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). The First and Fourteenth Amendments of the Constitution assure Cruz of free exercise of religion and freedom of association. The workplace is not exempt from respecting conduct prompted by an employee's religious convictions. As long as reasonable accommodations that do not cause employers to bear undue hardship are available, individuals ought not to feel constrained to act according to the principles of their faith.
WHEREFORE, this Court GRANTS plaintiff's motion for partial summary judgment and DENIES defendant's cross-motion for summary judgment.
IT IS SO ORDERED.
NOTES
[1] The decision on his grievance acknowledged that Cruz had submitted church publications declaring union membership in conflict with tenets of the Bible.
[2] The latter cases under subsection (j) take this view if one adopts the premise that to be a union member is in essence to pay full union dues.